651 P.2d 369

Doris FULTON, a married woman,
Plaintiff-Appellee,

v.

DYSART UNIFIED SCHOOL DISTRICT NO. 89; Mateo Alexandre, Margaret T. Baker, Sam Openshaw, Don Overstreet, Elray Sampson, in their respective capacities as the Board of Trustees of Dysart School District No. 89, Defendants-Appellants.

No. 1 CA–CIV 5827.

Court of Appeals of Arizona,
Division 1, Department B.

Feb. 2, 1982.

Rehearing Denied March 11, 1982.

Review Denied Sept. 21, 1982.

James A. Ullman, P. C. by James A. Ullman, Phoenix, for plaintiff-appellee.

Charles F. Hyder, Maricopa County Atty. by Q. Dale Hatch, Deputy County Atty., Phoenix, for defendants-appellants.

## OPINION

WREN, Chief Judge.

This is an appeal by the Board of Education of Dysart Unified School District of Maricopa County from a judgment setting aside the Board's dismissal of the appellee, Doris Fulton, as a teacher, and ordering that she be reinstated with payment of back salary and attorney's fees. We reverse.

## FACTUAL BACKGROUND

Mrs. Fulton had been a continuing teacher[1] in the Dysart School District for seventeen years prior to her dismissal. Her last assignment was in the common (elementary) school at El Mirage, Arizona, where, on the afternoon of September 12, 1979, she was acting as a playground supervisor when the events culminating in her dismissal commenced.

Two students were playing with a sponge football which fell into a pool of irrigation water near Mrs. Fulton. When she directed them to return to a proper playground area, one of them, Albert, became angry and allegedly spoke to her in an abusive manner. Mrs. Fulton slapped him in the face with the palm of her hand and took him to her classroom. Following a brief discussion between Albert and Mrs. Fulton, Albert ran to the office of the school secretary to inform her of the incident.

The secretary requested that Mrs. Fulton discuss the matter after school with Louis Meyer, the school principal. Prior to reporting to Mr. Meyer, however, Mrs. Fulton talked with Lola Keller, the classroom teacher representative. Mrs. Keller advised Mrs. Fulton to obtain a lawyer before talking about the matter in detail or submitting a written report.

When Mrs. Fulton met with Mr. Meyer at the end of the day, she would not relate what had happened. Nor did she offer an explanation for her silence, although Mr. Meyer stressed the seriousness of the situation to her, and explained his need to know what had transpired so that he could communicate with the student's parents in an informed manner. He further told Mrs. Fulton that Albert's parents had informed him they might institute a lawsuit against her. In response to Mrs. Fulton's inquiry as to whether she should obtain a lawyer, Mr. Meyer advised that she should, in order to determine what her rights were in the matter. Upon conclusion of their discussion, Mr. Meyer instructed Mrs. Fulton to submit a written report of what happened by 8:00 a.m. the following day. No report was submitted to Mr. Meyer on the morning of September 13, 1979 as he had requested. A further request that one be submitted by the end of the day also proved fruitless. Mr. Meyer then asked Mrs. Fulton to meet with him the following day at 4:00 p.m. When she did not do so, he contacted the district office.

On September 14, 1979, Mrs. Fulton engaged an attorney by telephone. The attorney later testified that he advised her not to discuss the matter with the administration until he could meet with her.

On the morning of September 17, 1979, a conference was held at the El Mirage School, with Mr. Smith, the district superin-

1. A.R.S. § 15–501(A)(2)
   " 'Continuing teacher' means a certificated teacher who is employed under contract in a school district as a full-time classroom teacher, a full-time classroom teacher employed under contract in an accommodation school, a school principal devoting not less than fifty percent of his time to classroom teaching or a supervisor of school children's activities, and whose contract has been renewed for his fourth consecutive year of such employment in the district."

tendent, Mr. Meyer and Mrs. Fulton. At this conference Mr. Smith asked Mrs. Fulton to submit a written report by 4:00 p.m. that day. Again, no report from Mrs. Fulton was forthcoming.

On September 18, 1979, the principal personally delivered a letter to Mrs. Fulton, which set 1:00 p.m. that day as the deadline for a written report. This deadline also passed without a response. She did, however, meet with her attorney on September 18 and he forwarded a letter to the district superintendent, requesting that a meeting be arranged between the school administration, Mrs. Fulton and himself.

On September 21, 1979, another letter was sent to Mrs. Fulton advising her of a scheduled Board of Education meeting on September 24, 1979 and informing her that she would be one of the topics of discussion at the meeting. Mrs. Fulton testified she did not receive this letter.

At the scheduled time, the board met and voted four to one to dismiss Mrs. Fulton at the end of thirty (30) days. That same day, prior to the meeting, Mrs. Fulton's attorney, Mr. Ross, had contacted Mr. Smith with another request that the parties get together. Mr. Ross stated that he was not informed by Mr. Smith of the impending School Board meeting. Nor did Mr. Smith report to the Board that the attorney had called him on Mrs. Fulton's behalf.[2]

A notice of dismissal was forwarded to Mrs. Fulton on September 26, 1979. The notice stated that her dismissal was based on the following charges:

1. Insubordination: failure to respond to requests of administration to make a statement concerning an incident with a student.

2. Unprofessional conduct to whit [sic]: striking a student on September 12, 1979.

3. Violating District policy #JGA: corporal punishment.

The notice also informed Mrs. Fulton of her right to request a hearing within 30 days. A hearing was formally requested by her attorney and a commission was convened pursuant to former A.R.S. § 15–262.[3] Hearings were subsequently held on December 5, and December 13, 1979. Following these hearings the commission entered written findings of fact, issues and recommendations which were submitted to the school board. In its findings the commission determined that the charges made against Mrs. Fulton were true, but found insufficient cause to warrant a dismissal and recommended that her teaching position be reinstated. This recommendation was rejected by the Board of Education. On January 25, 1980 it again voted four to one, to dismiss the appellee from her teaching position.

Mrs. Fulton appealed the decision of the Board to the superior court, pursuant to former A.R.S. § 15–264.[4] The superior court found that the Board action was arbitrary and capricious and constituted an abuse of discretion. It ordered that Mrs. Fulton be reinstated and that the Board pay her back salary due under her 1979–1980 contract, a 1980–1981 salary and $2,000 for attorney's fees. The Board appealed.

On appeal the Board contends its decision to dismiss Mrs. Fulton was based on "good cause" and therefore was not arbitrary, capricious or an abuse of discretion. It is claimed that the superior court judge exceeded his authority and abused his discretion by substituting his judgment for that of the Board, where there was substantial

---

2. The appellee makes much of these facts. However, we do not consider them to be relevant to our inquiry. The Arizona statutes concerning certification and employment of teachers do not require that continuing teachers be notified of Board of Education meetings wherein their employment status is to be considered. A.R.S. § 15–531, *et seq.* Once a continuing teacher has been informed of the board's intention to dismiss him at the expiration of thirty days from the date of service of notice, the proper procedure is for the teacher to file a written request for a hearing. A.R.S. § 15–539(A), (D). Filing the request suspends the dismissal procedure pending completion of the hearing. A.R.S. § 15–539(D).

3. A.R.S. § 15–262 was renumbered A.R.S. § 15–541 (supp.1981). *See* text, note 5 *infra.*

4. Renumbered A.R.S. § 15–543 (supp.1981).

evidence to support the Board's decision. Mrs. Fulton, in addition to refuting the above contentions, claims the Board's failure to review the transcript of the commission hearing prior to making its decision violated her due process rights. The Board argues that due process does not necessitate a full review of the evidence prior to making its decision.

## PROCEDURE FOR DISMISSAL OF A CONTINUING TEACHER

Pursuant to A.R.S. § 15–541(A), at the request of a continuing teacher who has been dismissed, a neutral fact-finding commission must be convened to conduct a hearing, review the evidence leading to the teacher's dismissal and make findings of fact, in accordance with the provisions of A.R.S. § 41–785. The commission findings "shall be made by a written summary containing the findings of fact, determination of issues and a recommendation either that the teacher should be dismissed or that the teacher should not be dismissed." A.R.S. § 15–541(D). A.R.S. § 15–541(E) charges that:

> The findings of the commission shall be reviewed by the governing board which shall render and as appropriate, implement its decision.

It is thus clear from the language of A.R.S. § 15–541 that the fact finding duties of the commission are distinguished from the decisional duties of the Board. In *Blair v. Lovett,* 196 Colo. 118, 582 P.2d 668 (1978), the Colorado Supreme Court discussed at length the statutory scheme of the Colorado

Teacher Employment, Dismissal and Tenure Act, which we find to be very similar to the Arizona Teacher Tenure Act. In *Blair,* the court stated:

> One purpose of assigning these duties to a hearing panel, of course, is to free the board of education from time-consuming evidence-gathering functions which can be performed adequately by a subordinate body. In addition, ... the 1967 act is designed to provide substantial protection for the academic freedom of teachers who have achieved tenured status. A primary facet of the protection is the availability, at the teacher's request, of an evidentiary hearing panel chosen in a manner designed to ensure its neutrality.[5]
> *Id.* at 671.

*Blair* went on to hold that the panel's findings of "basic" or evidentiary facts, "if supported by competent evidence, are binding on the board of education" and that "the board may not disregard those findings or substitute its own findings." *Id.*

■ As with the Colorado statutory scheme, the Arizona statutes do not authorize the school board to conduct a second full review of the evidence or to adopt new findings of fact. If the findings of fact are insufficient to enable the board to make a decision the proper remedy is to remand the case to the commission for more specific findings. *Knollmiller v. Welch,* 128 Ariz. 34, 37, 623 P.2d 823, 826 (1981).

■ In contrast to the board's inability to make factual determinations, it is vested with the exclusive power to terminate a

---

5. The method of selection provided in A.R.S. § 15–541, is also designed to ensure the commission's neutrality:

"B. Upon request for a hearing, a commission shall be authorized and members appointed thereto by the governing board to conduct the hearing provided for in subsection A of this section. Appointment of commission members shall be made pursuant to the selection provided for in subsection C of this section.

"C. One member of the commission shall be selected by the teacher, and one member shall be selected by the governing board. The third member shall be selected by these other two members and shall be chairman

and a voting member of the commission. If either the governing board or the teacher for any reason fails to select a commission member within seven days of the filing of the request for a hearing, such failure shall constitute a waiver of the right to selection, and the county school superintendent shall immediately make a selection for the defaulting party. If the members selected by the governing board and teacher, or county school superintendent in the event of default of one or both of the parties, cannot agree within ten days of their appointment on the selection of a third member, the third member of the commission shall be selected by the state personnel commission."

continuing teacher's employment. A.R.S. § 15–541. Therefore, the commission's recommendation that the teacher should be dismissed or that the teacher should not be dismissed is not binding on the board.

## SCOPE OF REVIEW

In keeping with the legislative scheme of vesting ultimate decision making power in the school board, the board's decision is subject to limited review on appeal to the superior court by the continuing teacher. In 1974, A.R.S. § 15–264 was enacted which provides in part:[6]

> The decision of the governing board may, on appeal of a continuing teacher, be reviewed by a court of competent jurisdiction in the same manner as the decision made in accordance with the provisions of § 41–785.

A.R.S. § 41–785 concerns the function of the Personnel Board with regard to public employees who have been dismissed, suspended or demoted after completing probationary periods of service. This statute limits the grounds which the dismissed employee may urge on appeal. A.R.S. § 41–785(D). Additionally, A.R.S. § 41–785(F) provides in part that: "The court shall review the hearing on the basis of the transcript and exhibits," with certain exceptions not pertinent here.

The adoption, in A.R.S. § 15–543 of the limited scope of review prescribed by A.R.S. § 41–785, represents a departure from the prior law which had permitted the superior court to hear and determine matters de novo. A.R.S. § 15–255 (1949) (repealed 1974).

Based upon this change in the law, this court has delineated the limited scope of review in *Board of Education of Tempe Union High School v. Lammle,* 122 Ariz. 522, 526, 596 P.2d 48, 52 (App.1979), as follows:

> [T]he judicial review of a dismissal of a continuing teacher is governed by the same rules which govern judicial review where the review in the superior court is

limited to review of a record produced before an administrative agency. . . .

We therefore hold in the context of an appeal by a continuing teacher who has been dismissed following a hearing and a determination by the governing board that good cause for the dismissal exists, the superior court may not substitute its determination of good cause for that of the board and is limited to a determination of whether reasonable evidence supports the board's finding, and if so, whether the determination that good cause exists is arbitrary, capricious or an abuse of discretion.

## GOOD CAUSE FOR DISMISSAL

In *Lammle, supra,* good cause was defined as "a cause which bears a reasonable relationship to a teacher's unfitness to discharge the duties assigned or is in a reasonable sense detrimental to the students being taught." *Id.*

It was determined by formal findings of the commission, that Mrs. Fulton had slapped Albert and that slapping a student is generally considered unprofessional. Secondly, the commission determined that Mrs. Fulton struck him in violation of the District's corporal punishment policy. Two of the commissioners felt the "insubordination" charge was sustained. However, Mrs. Fulton's attempts to communicate with the school authorities through her attorney were viewed as a sufficient attempt to reply to the administration's requests, thus making dismissal on the basis of the insubordination charge unwarranted. A third commissioner stated that the appellee was, in his opinion, not insubordinate. The recommendation of the commission was as follows:

> Without prior history of a similar action, the two charges, unprofessional conduct and violation of district policy, which were validated were not enough grounds for dismissal.
>
> The third charge, insubordination, which is an act serious enough for dis-

---

**6.** Renumbered A.R.S. § 15 -543 (1981).

missal without prior history, was sufficiently compromised by circumstances, and the Commission, by a 3–0 vote, recommends to the Dysart Unified Board of Education reinstatement of Mrs. Doris Fulton's teaching position.

This vote was taken on December 20, 1979.

On January 25, 1980, the Board of Education rejected the commission's recommendations and voted to dismiss the appellee for unprofessional conduct, violation of corporal punishment policy and insubordination. The Board did not disagree with the findings of fact of the commission. The Board did, however, disagree with the commission's determination that the charges were not good cause for dismissal. It obviously concluded that Mrs. Fulton's conduct was detrimental to the welfare of the students being taught at Dysart School District and that her failure to report to the principal and the superintendent upon request established an unfitness to discharge her duties as an employee of the Dysart School District. *Lammle, supra.*

In the present case, the appellee, Mrs. Fulton, was a tenured teacher in the Dysart School District with an employment record unmarred by charges of unprofessional conduct or insubordination prior to the incident which precipitated her dismissal. On the day of the incident the appellee was required to deal with a student who was in an area he was not supposed to be and had become profane when requested to remove himself to a proper area. While the manner in which appellee chose to deal with the student, i.e., slapping him, may have violated school policies, we expressly do not pass on the question whether this isolated instance of "unprofessional conduct" in the course of Mrs. Fulton's 17 year career with Dysart Schools was sufficient grounds for her dismissal. However, the circumstances following the incident, Mrs. Fulton's failure to discuss or submit written reports to the administration, led to the additional charge of insubordination.

The appellee testified that her failure to discuss with or submit written reports to the administration was based on advice from an education association representative as well as her legal counsel. It is uncontroverted that she had reason to carefully safeguard her interests, as the principal had warned her that the student's parents were threatening to sue her, that she might lose her job and that the matter would be taken to the superintendent and possibly the school board. Nevertheless, the appellee's actions, as determined by the Board, amounted to a willful disregard of her employer's request that she communicate about the incident.

Insubordination has been defined by the Arizona Supreme Court as importing "a wilful disregard of express or implied directions of the employer and a refusal to obey reasonable orders." *School District No. 8, Pinal County v. Superior Court,* 102 Ariz. 478, 480, 433 P.2d 28, 30 (1967).

While the commission found that her insubordinate conduct was sufficiently mitigated by the circumstances to advise her reinstatement, the Board of Education was of the opposite view. It was within the Board's province to make this decision. Judicial intervention with a school board's decision is, in this regard, called for only where the board has taken an unreasoned action, without consideration and in disregard for facts and circumstances. *Tucson Public Schools, District No. 1 of Pima Co. v. Green,* 17 Ariz.App. 91, 94, 495 P.2d 861, 864 (1972). "Where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." *Id., see also, Kelly v. Martin,* 16 Ariz.App. 7, 490 P.2d 836 (1971). The court should not sit as a "super school board" and impose its decision on the board. *Burnkrant v. Saggau,* 12 Ariz.App. 310, 470 P.2d 115 (1970).

The reversal of the School Board's order constituted a substitution of the trial court's judgment for that of the Board's in a manner entrusted exclusively to the School Board's discretion and reasonably based on the evidentiary findings of the

hearing commission. We find no evidence that the Dysart School Board acted in an arbitrary and capricious manner and that "good cause" in fact existed upon which to base Mrs. Fulton's dismissal.

## FAILURE TO REVIEW HEARING TRANSCRIPT AS VIOLATIVE OF DUE PROCESS

■ In reliance on a recent Court of Appeals decision entitled *Knollmiller v. Welch, et al.,* 128 Ariz. 34, 623 P.2d 823 (App.1981), the superior court made the following finding by minute entry:

The board's action in reversing the findings of the Commission without reviewing the record, which consists not only of ultimate findings but also of the evidence presented on that record, was arbitrary, capricious, and an abuse of discretion. Its decision reached absent such review, was unsupported by substantial evidence on the record.

In *Knollmiller, supra,* the school board had reached a conclusion to dismiss a tenured teacher without reviewing the transcript of the commission hearing and had based its decision, in part, on information presented to it outside the record of the commission. This was determined to be arbitrary and wrongful, for the board is required to rely on the findings of the commission in making its decision. A.R.S. § 15–541. While the import of the court's observation in *Knollmiller,* that "[t]he board had no transcript before it," was unclear, the trial court has interpreted *Knollmiller* to require the board to review the transcript. We cannot agree with this interpretation. In view of our previous determination that "fact finding" is exclusively within the province of the commission, the board could not have reviewed the transcript and made new or additional findings of fact upon which to base its decision. Moreover, in the present case, the findings of fact were detailed and there was no reason to remand the case to the commission. The Board properly relied on the findings of

fact made by the commission in making its decision.

The appellee additionally contends that the Board's decision without personally reviewing the testimony heard by the commission violated Mrs. Fulton's due process rights under the Arizona and the United States Constitutions. We disagree. The guarantees of due process call for a "hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

The ultimate fact finder in administrative proceedings is often a commission or board which has not heard witnesses testify. *U.S. v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980). This practice has been found to comport with due process standards. *See, e.g., id* at 2415 and citations therein.

Chief Justice Hughes' pronouncement in *Morgan v. U.S.,* 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288 (1936), that "the one who decides must hear," was followed by the explanation:

This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense. And to give the substance of a hearing, which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. *Id.*

Nothing in this suggests that the ultimate determinations in a case must be made by the body which has heard the evidence. *Utica Mutual Insurance Company v. Vincent,* 375 F.2d 129, 132 (2nd Cir. 1967). We therefore hold that the procedures set forth in A.R.S. § 15–541 fully

comport with the requirements of procedural due process.

The judgment of the trial court is reversed and the School Board's order of dismissal is reinstated.

JACOBSON, P. J., and RICHARD K. MANGUM, J., concur.

NOTE: The Honorable RICHARD K. MANGUM, Coconino County Superior Court Judge, was authorized to participate by the Chief Justice of the Arizona Supreme Court pursuant to Arizona Const. art. VI, § 3.