655 P.2d 353

William J. SIGLIN, a married man,
Plaintiff-Appellant,

v.

KAYENTA UNIFIED SCHOOL DIS-
TRICT NO. 27; Chee Bedoni; Bradley
Blair; Frank M. Donald, Sr.; Marcella
Hill and Rex I. Linville, in their respec-
tive capacities as the Kayenta Unified
School District No. 27 Board of Trus-
tees; and Robert E. Jenkins, in his rep-
resentative capacity as the superintend-
ent of the Kayenta Unified School Dis-
trict No. 27, Defendants-Appellees.

No. 1 CA–CIV 5257.

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 31, 1982.

Rehearing Denied Oct. 26, 1982.

Review Denied Dec. 7, 1982.

234

James A. Ullman, P.C. by James A. Ullman and Mary C. Stevens, Phoenix, for plaintiff-appellant.

C. Benson Hufford by C. Benson Hufford, Flagstaff, for defendants-appellees.

## OPINION

JACOBSON, Presiding Judge.

This is an appeal by William J. Siglin from a judgment affirming his dismissal as a teacher by the governing board of Kayenta Unified School District Number 27.

Mr. Siglin had become a continuing teacher in the Kayenta School District with the renewal of his teaching contract for the school year 1977–78.[1] On or about January 11, 1978, Mr. Siglin received a preliminary notice of classroom inadequacy from his principal, Dr. Donald Weinstein. Dr. Weinstein initiated a plan whereby Mr. Siglin was to meet with him on a daily basis, commencing on January 30, 1978, for the purpose of reviewing Mr. Siglin's lesson plans. Mr. Siglin met with Dr. Weinstein for 16 consecutive school days and on February 14, 1978, refused to continue to attend the meetings because he felt they were nonproductive.

On March 1, 1978, Mr. Siglin received a "Notice of Intent to Dismiss" from the Kayenta School District Governing Board. The notice set forth three reasons for dismissal: (1) insubordination, (2) unprofessional conduct and (3) lack of cooperation with administration officials. Six specific charges were set forth in the notice.

Mr. Siglin requested a hearing pursuant to A.R.S. § 15–541 (formerly § 15–262), which was convened before a tenure commission on April 13, 1978. The three commissioners, after hearing testimony and reviewing evidence, voted two to one to recommend dismissal based on insubordination. The commission found that four of the specific allegations (charges two, three, four and six) were insufficient to support termination or were mitigated by the circumstances. The commission found substantial evidence of the allegations contained in charges one and five to justify dismissal for insubordination. These charges were:

1. Your failure to meet with Dr. Weinstein and Mr. Bodiroga on February 15, 16, 17, 21, 22, 23, 24, 27 and subsequent class days contrary to the valid express requests of and directions of Dr. Weinstein, who is your principal. The purpose of these requested meetings was to give you supervision and to assist you in improving your classroom performance. This refusal to meet and failure to obey a valid request has continued through the present, even though you have been warned that your failure to obey the request constitutes insubordination.

\*    \*    \*    \*    \*    \*

5. On February 23, 1978, you responded in an inappropriate manner when Dr. Weinstein and Mr. Bodiroga attempted to discuss your refusal to meet with them to improve your teaching performance. Specifically, you lost your temper and shouted your refusal in a loud voice in the presence of students and other school personnel.

\*    \*    \*    \*    \*    \*

Upon reviewing the commission's findings of fact and recommendations, the school board voted to dismiss Mr. Siglin. Mr. Siglin appealed the board's decision pursuant to A.R.S. § 15–543 (formerly

1. A.R.S. § 15–501(A)(2) provides:

"Continuing teacher" means a certificated teacher who is employed under contract in a school district as a full-time classroom teacher, a full-time classroom teacher employed under contract in an accommodation school, a school

principal devoting not less than fifty per cent of his time to classroom teaching or a supervisor of school children's activities, and whose contract has been renewed for his fourth consecutive year of such employment in the district.

§ 15–264) to the Navajo County Superior Court. On December 20, 1978, the Superior Court remanded the case for further proceedings, holding

1. There is really no finding made as to charge number five. Charge number five dealt *with response in an inappropriate manner and specifically states what the manner was.* The finding does not have anything to do with the manner of response but finds that Mr. Siglin refused to meet with Dr. Weinstein and Mr. Bodiroga. Refusal was not part of charge number five but the manner of response was specified.

2. It is not clear whether the Commission and the Board intended that the findings of charge number one was tied together with number five in reaching the final conclusion.

This matter is remanded for further proceedings before the Commission and the Board.

The commission reviewed its findings and again voted two to one to recommend dismissal on the basis of insubordination. The commissioner voting against dismissal found that Mr. Siglin had refused to meet with his principal as set forth in charge number one but that this action did not justify dismissal; and that Mr. Siglin's behavior on February 23, 1978 was not inappropriate as alleged in charge number five. The two commissioners voting to dismiss Mr. Siglin wrote separate statements for their decision. Both commissioners found that Mr. Siglin had refused to meet with his principal as described in charge number one and this action constituted insubordination justifying dismissal. Both found that Mr. Siglin responded inappropriately to attempts to discuss this refusal as described in charge number five. However, only one commissioner found that dismissal was ap-

propriate punishment for charge number five.

On May 8, 1979, the school board again met, reviewed the entire record and voted to dismiss Mr. Siglin. On August 22, 1979, Mr. Siglin again appealed the board's decision to the superior court. On December 3, 1979, the superior court entered judgment in favor of the school district, and this appeal followed. We affirm the trial court.

Appellant argues that the trial court erred by affirming the board's dismissal because: (1) his conduct did not constitute insubordination, (2) the board acted arbitrarily and capriciously because there was no "good cause" for his dismissal and (3) the trial court erred in remanding the matter back to the commission and board.

In considering appellant's allegations of error, we first note that school board decisions with respect to teacher dismissals are subject to limited review by the superior court. A.R.S. § 15–543 provides in part:

The decision of the governing board may, on appeal of a continuing teacher, be reviewed by a court of competent jurisdiction in the same manner as the decision made in accordance with the provisions of § 41–785.[2]

In *Board of Ed., Etc. v. Lammle,* 122 Ariz. 522, 526, 596 P.2d 48, 52 (App.1979), this court described the limited scope of review pursuant to this statute as follows:

We therefore hold in the context of an appeal by a continuing teacher who has been dismissed following a hearing and a determination by the governing board that good cause for the dismissal exists, the superior court may not substitute its determination of good cause for that of the board and is limited to a determination of whether reasonable evidence sup-

2. A.R.S. § 41–785, which deals with the function of the personnel board with regard to public employees, limits the grounds which the dismissed employee may urge on appeal and further provides in subsection F:

The court shall review the hearing on the basis of the transcript and exhibits, except that in case of alleged irregularity in procedure by the personnel board not shown by the tran-

script, the court may order further testimony. The court shall upon request by either party hear oral arguments and receive written briefs. The court may affirm the order of the personnel board, remand the matter for further proceedings before the board, or reverse or modify the order. Appeal shall be available to the courts of appeal from the order of the superior court as in other civil cases.

ports the board's finding, and if so, whether the determination that good cause exists is arbitrary, capricious or an abuse of discretion.

See also *Fulton v. Dysart Unified School District No. 89,* 133 Ariz. 314, 651 P.2d 369 (1982).

■ In the instant case, the trial court found that the decision of the governing board was not arbitrary and capricious. We therefore start from the well-established principle that it is presumed that the trial court found every fact necessary to support its judgment, and if there is any reasonable evidence to support the trial court's decision, it must be affirmed on appeal. *Apache East, Inc. v. Wiegand,* 119 Ariz. 308, 580 P.2d 769 (App.1978).

■ We turn first to appellant's contention that his conduct did not constitute insubordination as a matter of law. Our supreme court defined insubordination in *School District No. 8, Pinal County v. Superior Court,* 102 Ariz. 478, 480, 433 P.2d 28, 30 (1967) as follows:

Insubordination imports a willful disregard of express or implied directions of the employer and a refusal to obey reasonable orders [citation omitted] and lack of cooperation is characteristically a subtle species of insubordination. Both terms are descriptive of a class of censurable practices destructive of the efficiency of the employer's organization.

Appellant's argument addresses three components of this definition in an attempt to show that his conduct does not fall within its parameters. First, he claims that he was not acting in willful disregard of directions of an employer because he met with Dr. Weinstein for 16 days pursuant to Dr. Weinstein's request and submitted his lesson plan book as ordered. This argument obviously overlooks the fact that he thereafter refused to continue such meetings in defiance of his principal's directive.

Second, appellant argues that Dr. Weinstein's orders were unreasonable because the daily meetings were unproductive. He claims this unreasonableness is evidenced by

the tenure committee's suggested modifications of Dr. Weinstein's plan. The fact that the tenure committee suggested changes does not indicate an implicit finding of unreasonableness. Further, we note that the school board was not bound by such conclusions of the tenure committee but could independently judge the reasonableness of Dr. Weinstein's directive to Mr. Siglin.

The meetings were conducted during Mr. Siglin's regular class preparation period. No evidence was presented that attendance at such meetings constituted an undue burden on appellant. Essentially, appellant's basis for characterizing these orders as unreasonable is his personal opinion that the meetings were unproductive. In contrast, Dr. Weinstein testified that he observed improvement in Mr. Siglin's lesson plans as a result of these sessions. It was not the function of the trial court nor is it the function of this court to weigh the evidence with respect to determining the educational value of such meetings. There is reasonable evidence in the record to support the finding that appellant refused to meet with his principal. There is also evidence that these meetings were initiated to improve appellant's teaching skills. We cannot find as a matter of law that the school board abused its discretion by concluding that Mr. Siglin's failure to attend such meetings was insubordination thereby implicitly finding Dr. Weinstein's orders to be reasonable.

Third, appellant claims that his actions did not demonstrate lack of cooperation but were two isolated incidents that cannot be characterized as a continuing refusal to cooperate with supervisors. In so arguing, appellant has attempted to engraft an additional requirement to the definition of insubordination set forth in *School District No. 8, Pinal County v. Superior Court, supra, i.e.,* there must be *continuing* conduct. Even if this were the law in Arizona, which it is not, appellant's refusal to attend lesson plan review sessions was a continuing refusal.

Appellant's second major claim of error on appeal is that good cause did not exist to dismiss him. Good cause was defined in

*Board of Ed., Etc. v. Lammle, supra* at 526, 596 P.2d at 52 as "a cause which bears a reasonable relationship to a teacher's unfitness to discharge the duties assigned or is in a reasonable sense detrimental to the students being taught."

■ Appellant argues that he was a victim of a scheme to manufacture a case to support his dismissal as shown by the fact that four out of the six charges against him were dismissed. Appellant also emphasizes the fact that tenure committee members disagreed over whether charges one and five constituted good cause for dismissal. However, this argument fails to recognize that it was not the function of the trial court to determine whether there was evidence to support a conclusion that Mr. Siglin should have been retained. Rather, it was the function of the trial court to determine whether reasonable evidence supported the school board's determination that good cause existed for dismissal. *Fulton v. Dysart Unified School District No. 89, supra; Board of Ed., Etc. v. Lammle, supra.* All three commissioners made a factual finding that Mr. Siglin had refused to meet with Dr. Weinstein, even after having been told that such refusal would be considered insubordination. The school board was free to make its own determination whether, under these facts, there was good cause for dismissal. *Fulton v. Dysart Unified School District No. 89, supra.*

■ The record indicates that Mr. Siglin had been notified that the district considered his classroom teaching performance to be inadequate. He nevertheless refused to meet with his principal, who had expertise in Mr. Siglin's subject area, for lesson plan review meetings as alleged in charge number one. Additionally, the hearing transcript supports the findings of two commissioners that appellant's behavior in refusing to meet with administrators on February 23, 1978 was inappropriate as alleged in charge number five. While the record does not indicate whether the board based its decision on both charges one and five, there was evidence to support both findings, and the board had discretion to evaluate both as good cause for dismissal irrespective of whether the commission recommended dismissal on the basis of both charges. *Fulton v. Dysart Unified School District No. 89, supra.* Both charges are reasonably related to appellant's fitness as a teacher. We therefore conclude that the school board did not abuse its discretion in finding that good cause existed for appellant's dismissal.

■ Appellant's final argument is that the trial court erred in remanding the matter back to the commission and the board because it had sufficient evidence to make a determination in December, 1978 that Mr. Siglin was not guilty of insubordination to a degree which would justify his dismissal. Appellant also contends that the remand did not fulfill its purpose because the commission failed to clarify its findings on whether allegation number five occurred.

Appellant has not demonstrated any prejudice from the remand but assumes that had there been no remand, the trial court would have ruled in his favor. This is speculative and not supported by the record. Additionally, the trial court is authorized by A.R.S. § 15–543 to make its decision in accordance with the provisions of A.R.S. § 41–785 which specifically provides that the court may remand the matter for further proceedings before the board. We find no error in the trial court's decision to remand this matter for clarification.

Judgment affirmed.

GRANT, J., and RICHARD M. DAVIS, Judge Pro Temp., concur.

NOTE: The Honorable RICHARD M. DAVIS, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.