No. 93-021

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

TRUSTEES, CARBON COUNTY
SCHOOL DISTRICT NO. 28,

      Petitioner and Respondent,

  v.

HELEN SPIVEY,

      Respondent and Appellant.

**FILED**

**DEC 22 1993**

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Carbon,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Emilie **Loring,** Attorney at Law, Missoula, Montana

      For Respondent:

          Laurence R. Martin and Sol Lovas, Felt, Martin
& Frazier, Billings, Montana

Submitted on Briefs:  August 26, 1993

Decided:  December 22, 1993

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Thirteenth Judicial District Court, Carbon County, order reversing the State Superintendent's reversal of a County Superintendent's conclusion that the Trustees of Carbon County School District No. 28 correctly terminated Helen Spivey's teaching contract. We affirm.

We restate the issues on appeal:

I. Did the trial court use the correct standard of review when it reversed the State Superintendent's decision?

II. Should County Superintendent Reynolds have reviewed this action de novo?

III. Did the State Superintendent correctly conclude that:

A. there was not substantial evidence to support County Superintendent Reynolds' conclusion that Spivey's teaching contract was correctly terminated?

B. Reynolds erred in concluding that Spivey's termination was not premature?

C. Reynolds erred in concluding that Spivey could be terminated because of insubordination?

FACTS

Appellant, Helen Spivey (Spivey) was a Montana certified, tenured teacher in the Carbon County School District No. 28. The Respondents are the Trustees of the Carbon County School District No. 28 (Trustees).

Spivey had taught in a multi-grade classroom at Boyd School in Carbon County for 8 years. The teaching staff at Boyd School consisted of one teacher, Spivey and one aide, Kathy Grewell.

2

Problems arose during the 1985-1986 school year which culminated in a letter to Spivey from Bruce McKee, a school board trustee, to inform her that there had been a recommendation to terminate her teaching contract. She waived the right to a hearing before the Trustees. In a letter from the Trustees, dated March 31, 1986, Spivey was notified that they had voted unanimously to terminate her teaching contract and "not offer [her] a new contract for the ensuing 1986-1987 school year." Further facts will be provided as necessary in the body of the opinion.

PROCEDURAL BACKGROUND

Spivey appealed the Trustees' decision to the county Superintendent of Schools, Carbon County. Edith Evans (Evans), Deputy County Superintendent of Schools, Stillwater County, sat in place of Peggy Kotar (Kotar), Superintendent of Schools, Carbon County, who had disqualified herself. Evans reversed the decision of the Trustees, concluding that "Spivey was given inadequate opportunity to remedy the problems" and "[t]he admissible evidence... is insufficient to establish good cause for Spivey's termination....*'  (County Decision I) Evans ordered reinstatement of Spivey as a tenured teacher in the Boyd School "with no loss in salary or fringe benefits." The Trustees appealed this decision to the State Superintendent of Public Instruction, Ed Argenbright (Argenbright). Argenbright reversed Evans' decision and affirmed the Trustees. (State Decision I)

Spivey appealed Argenbright's order to the First Judicial District Court, Lewis and Clark County. (District Court Decision I)

3

The trial court made the following conclusions:

1. "Good cause can be based only on competent evidence regarding the actions or inactions of the teacher in question."

2. Letters from parents who were available to testify at the hearing could be considered for content containing parents' observation and parents' intentions. Information contained in the letters of descriptions of what the children told their parents should have properly been excluded as hearsay.

3. Letters from Mr. Christensen, Superintendent of Yellowstone County Schools and letters from parents unavailable to testify at the hearing were properly excluded.

4. Since the State Superintendent did not address the County Superintendent's conclusion that Spivey was not given adequate time to address her problem areas (with the exception of playground supervision), the County Superintendent's conclusion was affirmed.

5. The State Superintendent's conclusion that there was substantial credible evidence of insubordination must be reversed because it was not part of the County Superintendent's findings below.

6. Because evidence was improperly excluded when the County Superintendent made her initial decision, the case was remanded to the County Superintendent to reconsider the evidence in light of these holdings to determine whether there was reliable, probative and substantial evidence to find good cause for Spivey's termination.

On remand, the case was considered by Acting County

4

Superintendent of Schools, Carbon county, Carole Reynolds (Reynolds). (County Decision II) Reynolds reviewed the transcript de novo, concluding that "loss of confidence in the teacher was justified and is just cause for termination." She also concluded that insubordination was just cause for termination and Spivey was insubordinate on at least three occasions. Finally, she concluded that Spivey's actions were "patently unacceptable and the termination of Petitioner was not Premature."

Reynolds' decision was appealed to the Superintendent of Public Instruction Nancy Keenan (Keenan). (State Decision II) Keenan reversed Reynolds' decision, concluding that Reynolds erred in finding that Spivey could be terminated for insubordination: she erred in finding that Spivey's termination was not premature: and finally, that she erred in holding "that there was reliable, probative and substantial evidence on the whole record which identifies actions or inactions of Spivey which resulted in loss of parental confidence and potential loss of students."

The State Superintendent's order was appealed to the Thirteenth Judicial District Court, Carbon County. (District Court Decision II) The District Court reversed the State Superintendent and affirmed the findings of fact and conclusions of law of the County Superintendent of Stillwater County. The court concluded that there was substantial evidence to uphold Reynolds' finding that parents had lost confidence in Spivey. It further concluded that this loss of confidence was based on specific actions and inactions by Spivey and the State Superintendent should have

affirmed the County Superintendent's conclusion that loss of parental confidence was good cause for termination. The court also determined that the County Superintendent's conclusion that Spivey's insubordination was good cause for termination was correct. Finally, the court determined that the evidence suggested that Spivey's actions were patently unacceptable because parents had threatened to remove their children from the school. Because these actions were patently unacceptable, the County Superintendent correctly concluded that Spivey's termination was not premature.

Spivey appealed the District Court's order to this Court which brings us to the present action.

### STANDARD OF REVIEW

Our standard of review for findings of fact is whether a finding is "clearly erroneous." Steer Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603. "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." Steer, 803 P.2d at 603. Our standard of review for conclusions of law is whether the tribunal's interpretation of the law is correct. Steer, 803 P.2d at 603.

### OPINION

Spivey argues that the District Court did not correctly apply § 2-4-704, MCA, and that it substituted its judgment for that of the State Superintendent. It was the State Superintendent's job to determine whether the County Superintendent exceeded her authority

6

upon remand of the case and whether the admissible evidence Reynolds reviewed established good cause for terminating Spivey's contract. The District Court was "then limited to the standards of review of the Administrative Procedure Act. In deciding matters not before him the District Judge exceeded the proper scope of review." Finally, Spivey argues that there is substantial evidence in the record to support the findings and conclusions of the State Superintendent and that she should have been affirmed.

The Trustees state that what Spivey is really arguing is that the District Court reviewed the wrong decision - it should have reviewed "the State Superintendent's decision for factual support and legal error, rather than reviewing the County Superintendent's decision." They contended that she then proceeded to argue two issues that were not really stated in her statement of the issues. She argues that Reynolds exceeded the scope of her authority on remand from the First Judicial District Court and that the facts on the record support the State Superintendent's decision but do not support the County Superintendent's findings and conclusions.

## I. CORRECT STANDARD OF REVIEW

The proper standard of review in a case such as this, which is reviewed at a number of different levels, has caused a great deal of confusion. We therefore take this opportunity to clarify this area of the law. The decision of the county superintendent is subject to review by the state superintendent under Rule 10.6.125 ARM, which provides as follows:

> 10.6.125 APPELLATE PROCEDURE - STANDARD OF REVIEW
> (1)The state superintendent of public instruction shall

be subject to the standard of review as set forth below and shall be confined to the record established at the factfinding hearing.

(2) In cases of alleged irregularities in procedure before the county superintendent not shown on the record, proof thereof may be taken by the state superintendent.

(3) The state superintendent, at his/her discretion or upon request, may hear oral arguments and receive written briefs.

(4) The state superintendent may not substitute his/her judgment for that of the county superintendent as to the weight of the evidence on questions of fact. The state superintendent may affirm the decision of the county superintendent or remand the case for further proceedings or refuse to accept the appeal on the grounds that the state superintendent fails to retain proper jurisdiction on the matter. The state superintendent may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the findings of fact, conclusions of law and order are:

(a) in violation of constitutional or statutory provisions:

(b) in excess of the statutory authority;

(c) made upon unlawful procedure:

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record;

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion;

(g) affected because findings of fact upon issues essential to the decision were not made although requested.

The decision of the state superintendent, in turn, is subject to review by a district court under § 2-4-704, MCA, which provides:

Standards of review. (1) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency not shown in the record, proof thereof may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:

8

(a) the administrative findings, inferences, conclusions, or decisions are:

(i) in violation of constitutional or statutory provisions;

(ii) in excess of the statutory authority of the agency:

(iii) made upon unlawful procedure;

(iv) affected by other error of law;

(v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

(vi) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(b) findings of fact, upon issues essential to the decision, were not made although requested.

Section 2-4-704, MCA, and Rule 10.6.125, ARM, are almost identical. The salient points in both are that the reviewing body may not substitute its judgment for that of the lower body as to the weight of the factual evidence and that the reviewing body may affirm, remand, reverse or modify the prior decision. Both require reversal or modification of a decision of a lower body if substantial rights of the appellant have been prejudiced because of certain errors found in the lower body's findings and conclusions.

The major cause of confusion in the instant case is whether, under § 2-4-704, MCA, a district court should review the decision of the county superintendent or the decision of the state superintendent.

A district court, reviewing a decision appealed from the state superintendent, which was appealed from a county superintendent's decision, must review the decision of the state superintendent. Trustees, Missoula Cty S.D. 1 v. Anderson (1988), 232 Mont. 501, 504, 757 P.2d 1315, 1317. However, in order to review the decision of the state superintendent and insure that she has correctly

9

reviewed the county superintendent's decision, the district court must review the findings and conclusions of the county superintendent. The district court must decide whether the county superintendent's findings and conclusions were supported by reliable, probative and substantial evidence in the first instance in order to determine whether the state superintendent reviewed and correctly affirmed or reversed the decision of the county superintendent.

Here, the District Court correctly reviewed State Decision II but it could not do so without focusing on County Decision II first. It properly reviewed County Decision II, noting that the conclusions were supported by reliable, probative and substantial evidence, and concluded that because the County Superintendent properly determined that Spivey's contract was terminated for good cause, the State Superintendent should have affirmed County Superintendent Reynolds' decision. (We note that the county superintendent is required to hold a de novo hearing when deciding a controversy between the school and a teacher whose contract was terminated. Yanzick v. School District No. 23, Etc. (1982), 196 Mont. 375, 641 P.2d 431.)

The District Court determined that differences in the findings and conclusions of County Decision II from those of County Decision I were not improper because the District Court Decision I instructed Reynolds, upon remand, to review additional evidence which had been previously excluded. The court noted that the additional evidence included "such items as the children's

10

attitudes toward school, the lack of discipline at school, the parents' dissatisfaction with their conversations with Spivey about their children's problems, and Spivey's failure to respond to such problems." This evidence led County Superintendent Reynolds to conclude that Spivey's contract was correctly terminated, and the State Superintendent should have affirmed this decision because the County Superintendent's decision was based on substantial evidence.

## II. COUNTY DECISION II

Spivey argues that County Superintendent Reynolds should not have reviewed the entire record de novo, when deciding County Decision II. Rather, she should have considered specific evidence, such as "the parents' intentions and observations and whether Spivey had adequate opportunity to improve her playground supervision...." The Trustees counter that "County Superintendent Evans' findings were voided and entirely thrown out by Judge Bennett when he ruled that the key issues - good cause and prematureness - had to be entirely reconsidered. Therefore, the case stood in the position of having a hearing record, but no findings on the key issues of good cause and prematureness."

We conclude that County Decision II was properly based on a de novo review of the record. When the original trial level official is replaced, a subsequent trial level official has the authority to make new findings and conclusions if there is no protest from either of the parties. As stated in Phalen v. Rilley (1970), 154 Mont. 399, 403, 465 P.2d 102, 105. citing Worden v. Alexander et al. (1939), 108 Mont. 208, 211, 90 P.2d 160, 161:

11

While there is some conflict in the authorities, the decided weight of authority is that when the trial judge to whom the case has been submitted upon evidence introduced before him dies before making findings of fact, his successor has no authority to make findings of fact and conclusions of law without the consent of the parties involved; in such a case any party has the right to insist upon a new trial. (Citing cases.) However, a party may waive his right to a new trial and consent that the successor may decide the case made on the record before the trial judge. (Citing cases.)

We find this proposition applies in this case. Nothing in the record suggests that Spivey protested against the substitution of County Superintendent Reynolds nor did she request a new trial. In addition, when the case was remanded by the First Judicial District Court with the proviso, "so that she can reconsider the evidence in light of our holdings and make a determination on these issues," the County Superintendent was given latitude in her decision-making beyond the parameters of County Decision I. Zavarelli v. Might (1989), 239 Mont. 120, 125-126, 779 P.2d 489, 493, is instructive:

We come now to the effect of the mandate from this Court to the District Court when, on reversal and remittitur, the District Court was instructed to take "such further proceedings as are necessary in light of this opinion and the facts found by the District Court."

"On remand, the trial court may consider or decide any matters left open by the appellate court, and is free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not presented or settled by such decision. The issues are generally open on a retrial when a case is reversed and remanded for further proceedings. If the mandate speaks only in the light of the special facts found, the lower court is at liberty to proceed in all other respects in the matter that, according to its judgment, justice may require. The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. The mandate is to be interpreted according to the subject matter and, if possible, in a manner to promote justice." (Citation

12

omitted.)

Additionally Zavarelli continues:

> When this Court reversed the first judgment of the District Court as to a prescriptive easement, and remanded the cause to the District Court for further proceedings, the cause was then before the District Court in the posture of not having a final judgment. In that situation, when there is nothing in the terms of the mandate to prevent it, the trial court has the power, on reconsideration, to find the same facts and change its holding, or to find different facts consistent with its original holding.

Zavarelli, 779 P.2d at 493. (Citation omitted.)

> District Court Decision I stated:
>
> Neither this Court nor the State Superintendent is empowered to weigh the evidence in this case. By the same token this Court cannot act as an expert in matters of teacher termination. Thus, we are unable to determine whether, with the inclusion of the previously excluded evidence, there is good cause to justify termination. Further, we have heard no argument and make no holding as to whether, in any event, Spivey's termination was premature because she had not been given adequate opportunity to address the identified problems or whether her actions were so patently unacceptable that she could be termination (sic) without such an opportunity.
> Therefore it is hereby ORDERED that this case be remanded to the County Superintendent so that she can reconsider the evidence in light of our holdings and make a determination on these issues.

The District Court left open the determination of good cause for the termination of Spivey's contract and the prematureness of her contract termination and whether Spivey's actions were so patently unacceptable that she could be terminated without an opportunity to adequately address the problems. County Superintendent Reynolds was free to determine anew the issues in the present action in County Decision II.

### III. STATE SUPERINTENDENT'S CONCLUSIONS

13

The State Superintendent in State Decision II concluded that there was not substantial evidence in County Decision II to support Reynolds' conclusions of law that Spivey's teaching contract was properly terminated, that Reynolds' erred in determining that Spivey's termination was not premature and in determining that Spivey could be terminated because of insubordination.

## A. SUBSTANTIAL EVIDENCE TO TERMINATE CONTRACT

Spivey contends that the State Superintendent correctly determined that "there was not reliable, probative and substantial evidence on the whole record which identified actions or inactions of Spivey which resulted in loss of parental confidence and potential loss of students." However, a close review of the record reveals that the District Court properly concluded that there was substantial evidence on the record to support County Superintendent Reynold's conclusion that actions and inactions of Spivey resulted in loss of confidence by parents, particularly when Reynolds reviewed the evidence which had been excluded in County Decision I. A number of parents reported that their children were unhappy and disenchanted with school. There were eyewitness accounts of incidents of lack of supervision and disciplinary problems with the children. A number of parents stated that they would remove their children from the school if the teacher was retained. Because reliable, probative and substantial evidence supports Reynolds' determination that Spivey had lost the confidence of the parents due to her various actions and inactions, the State Superintendent substituted her judgment for that of the County Superintendent and,

14

thus, erred in reversing this conclusion in County Decision II

## B. PREMATURENESS OF TERMINATION

Spivey contends that Reynolds erred in concluding that the termination of her contract was not premature. She also asserts that Reynolds had no jurisdiction to make a decision regarding whether the termination was premature. The Trustees, on the other hand, state that the County Superintendent correctly held that the problems were so serious as to be patently unacceptable and therefore a period of remediation was not required. The Trustees further assert that since Spivey would not admit to any problem areas, a period of remediation would have been useless.

We conclude that County Superintendent Reynolds properly determined that Spivey's termination was not premature. District Court Decision I provides the framework within which County Decision II was to have been decided and it provides:

> [W]e have heard no argument and <u>make no holding</u> as to whether, in any event, Spivey's termination was premature because she had not been given adequate opportunity to address the identified problems or whether her actions were so patently unacceptable that she could be termination (sic) without such an opportunity. (Emphasis added.)

Clearly, in its final holding, the issue of whether Spivey's termination was premature was left open for decision in County Decision II. Spivey argues, however, that the District Court Decision I concluded that Spivey did not have adequate time to address the problems other than playground supervision. Spivey cites the District Court decision, page 14, lines 7-14 which states:

15

> We reiterate however that the State Superintendent made no findings or conclusions regarding the other items [other than playground supervision] listed in the directives. Therefore, we infer that he agreed with the County Superintendent [Evans] that Spivey had not been given adequate opportunity to remedy these problems. Because there is no disagreement, we will not review this issue and further affirm the County Superintendent's conclusion that Spivey had not been given adequate opportunity to address the other problems.

Although this passage is indeed, inconsistent with the passage aforementioned, the trial court's final holding in District Court Decision I is determinative. It clearly states that it makes no holding as to the issue of whether Spivey had an adequate opportunity to address the identified problems. Therefore, this issue was left open for County Superintendent Reynolds to decide after a de novo review in County Decision II.

There was sufficient evidence presented to establish actions which resulted in parents' threats to withdraw their children from the school. There was also evidence that Spivey would not acknowledge that there were deficiencies upon which to improve. This evidence is sufficient to support a conclusion that the County Superintendent did not abuse her discretion in determining that Spivey's actions and inactions were patently unacceptable and that she could be terminated without an opportunity to improve her deficient areas. Hence, the State Superintendent erred in reversing the County Superintendent in State Decision II. As was so aptly stated in Siglin v. Kayenta Unified School Dist. No. 27 (Ariz. 1982), 655 P.2d 353, 357,

> [I]t was not the function of the trial court to determine whether there was evidence to support a conclusion that Mr. Siglin should have been retained. Rather, it was the

16

> function of the trial court to determine whether reasonable evidence supported the school board's determination that good cause existed for dismissal. (Citations omitted.)

This reasoning applies equally to the State Superintendent and the District Court in this case. The function of both levels of review is to determine whether the original hearing officer's findings of fact are supported by substantial evidence and the conclusions of law are not characterized by an abuse of discretion. Here, the District Court correctly concluded that County Superintendent Reynolds could properly consider the issue of whether Spivey's termination was premature and that she properly determined that the termination was not premature because Spivey's actions were patently unacceptable.

## C. INSUBORDINATION

Finally, Spivey contends that the issue of insubordination was not remanded by the District Court and the County Superintendent did not have jurisdiction to consider evidence on insubordination. As stated earlier in this opinion, the "trial court" may consider any issues left open by the appellate court in further progress of the case and may proceed in all other respects as justice may require. Zavarelli, 779 P.2d at 493. The County Superintendent appropriately considered the issue of insubordination because there was substantial evidence that she left the school premises before the end of the school day, failed to attend board meetings and failed to supervise the students on the playground after a mandate to that effect had been issued. Insubordination, in itself, can be a reason for termination of a teaching contract. Ware v. Morgan

17

Cty. School D. No. RE-3 (Col. 1988), 748 P.2d 1295; Siqlin, 655 P.2d at 357.

In conclusion, County Decision II is supported by substantial credible evidence and the County Superintendent did not abuse her discretion in formulating her conclusions of law. The State Superintendent, however, erred in not affirming the County Superintendent's decision and in substituting her own judgment for that of the County Superintendent. Finally, the District Court correctly reviewed the State Superintendent's decision by focusing upon the County Superintendent's findings and conclusions and concluding that County Decision II was supported by the record.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

18

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur in that part of the majority opinion which discusses the proper standard of review in a case like this which originated before the County Superintendent, and after an intermediate state level of review, was appealed to the State District Court.

However, I dissent from that part of the majority opinion which affirms the decision of the second County Superintendent because I conclude that it was contrary to the first District Court's decision, exceeded the scope of issues to be decided on remand, and was contrary to the law of the case as established by the first District Court appeal.

In the first District Court opinion, Judge Gordon Bennett concluded that this case should be remanded to the County Superintendent for determination of whether there was good cause to support Spivey's termination considering parents' observations which were not considered in the first decision. However, he specifically held that loss of parental confidence did not establish good cause for termination, and that insubordination, since not raised on appeal, could not form the basis of Spivey's termination.

He held that "good cause cannot be based on strictly external factors such as community hostility. Good cause can be based only on competent evidence regarding the actions or inactions of the teacher in question."

With regard to insubordination, he held that:

19

Initially, we note that the County Superintendent did not make any finding or conclusion on the trustees' allegation of insubordination and that the trustees did not assert this omission as error in the appeal to the State Superintendent. Nevertheless, the State Superintendent found that there was substantial credible evidence of insubordination. . . . Spivey has challenged this finding.

The Montana Supreme Court has stated explicitly that: "Findings of the reviewing agency properly cannot be included as facts when they are not part of the findings below." Thus, we must reverse the State Superintendent on this issue. [Citation omitted].

This case was not remanded by the original District Judge to the County Superintendent for further findings regarding insubordination. He concluded that because the Trustees had not appealed the failure of the original County Superintendent to find insubordination, that that issue could not be raised on appeal, and the absence of insubordination was a final determination.

However, on remand, the second County Superintendent based her decision to uphold the termination of Spivey on two conclusions: (1) "loss of confidence in the teacher;" and (2) "insubordination." These conclusions were contrary to the law of the case as established by the District Court and should be reversed.

I also conclude that the second County Superintendent ignored the mandate from the District Court regarding the determination of whether or not Spivey's termination was premature. The District Court concluded that Spivey had been given adequate notice that her playground supervision was deficient, and had been given an adequate opportunity to correct that aspect of her performance. However, the court went on to add that since the State

20

Superintendent made no findings or conclusions regarding Spivey's opportunity to correct other alleged deficiencies in her performance,

> [W]e infer that he agreed with the County Superintendent that Spivey had not been given adequate opportunity to remedy these problems. Because there is no disagreement, we will not review this issue and further affirm the County Superintendent's conclusion that Spivey had not been given adequate opportunity to address the other problems.

In conclusion, the District Court held that:

> Further, we have heard no argument and make no holding as to whether, in any event, Spivey's termination was premature because she had not been given adequate opportunity to address the identified problems or whether her actions were so patently unacceptable that she could be termination [sic] without such an opportunity.

Based on these two conclusions by the District Court, the County Superintendent was left with two options. She could conclude that Spivey's termination was justified based on inadequate playground supervision alone, or she could conclude, based on the additional evidence, that there was good cause for her termination based on other deficiencies in her performance, and that those deficiencies were "so patently unacceptable that she could be terminated without an opportunity to correct her inadequacies." On remand, the second County Superintendent did neither. She did not base her conclusion that there was good cause for termination on inadequate playground supervision. She did conclude that Spivey's conduct was patently unacceptable, but did not set forth the particulars in which it was patently unacceptable so that a reviewing court could determine whether or not *Spivey's*

21

conduct created a legal exception to the rule that tenured teachers are entitled to an opportunity to cure inadequacies in their performance.  The only reasons given as justification for Spivey's termination were loss of parental confidence and insubordination, which, for the reasons set forth previously, were beyond the scope of the issues to be considered by the County Superintendent on remand from the District Court.

For these reasons, I dissent from that part of the majority opinion which holds that the second County Superintendent did not abuse her discretion by exceeding the scope of her mandate from the District Court.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing concurrence and dissent.

_____
Justice

22

December 22, 1993

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Emilie Loring
Attorney at Law
500 Daly Ave.
Missoula, MT 59801

Laurence R. Martin
Felt, Martin, Frazier & Lovas
P.O. Box 2558
Billings, MT 59103-2558

Kathleen Holden
Office of Public Instruction
State Capitol
Helena, MT 59620


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
     Deputy