495 P.2d 861

**TUCSON PUBLIC SCHOOLS, DISTRICT NO. 1 OF PIMA COUNTY, Appellant,**

v.

Goldie GREEN, as mother and next of kin of Debra Askew, a minor, Appellee.

No. 2 CA–CIV 1089.

Court of Appeals of Arizona, Division 2.

April 11, 1972.

Rehearing Denied June 9, 1972.

Rose Silver, Pima County Atty., by J. William Brammer, Jr., Special Deputy County Atty., Tucson, for appellant.

Rubin Salter, Jr., Tucson, for appellee.

Pima County Legal Aid Society by Peter D. Eisner and P. Bryce Appleton, Tucson, amicus curiae.

HATHAWAY, Judge.

School District One seeks review of a superior court order in a special action instituted by the appellee wherein she challenged a school board order expelling her daughter from Tucson High School and permanently suspending her from attendance at any school within School District One.

The complaint alleged that the Board of Education of Tucson School District One, after an administrative hearing on March 9, 1971, voted unanimously in favor of expulsion and permanent suspension; that the Board's reasons for expulsion were unauthorized entrance upon the grounds and building at Cholla High School, failure to comply with the lawful direction of a school official, disruption of the educational process, and knowingly violating a school district rule; that Debra had been adjudicated a delinquent child on March 24, 1971; that the Board's action was arbitrary and capricious; and that Debra, one of seven students from Tucson High School who had been permanently expelled, was denied equal protection of the laws for the reasons that no Cholla student involved in the incident at Cholla High School had been expelled. The appellee requested that the superior court set aside the expulsion order or, in the alternative, "modify the decision of the school board at least to the extent that the minor's punishment be commensurate with the evidence that the board had before it."

The court issued an order to the appellant to appear and show cause why the relief prayed for should not be granted. A hearing was duly conducted at which both parties presented evidence and on July 2, 1971, judgment was entered decreeing that the school board's order of expulsion be modified to allow Debra to re-enter District One schools at the beginning of the second semester of the 1971–72 school year.

In the recent case of Kelly v. Martin, 16 Ariz.App. 7, 490 P.2d 836 (1971), we had occasion to consider and discuss the role of the judiciary when the actions of school officials are called into question. We pointed out that judicial review is very narrowly circumscribed—the sole inquiry is whether action is fraudulent, arbitrary or capricious. In answering this question, we apply standards set by reason and reasonable people, bearing in mind that such a standard may permit a difference of opinion on the same subject.

No question was raised as to the requisite procedural due process. Nor was any question raised as to the school board's authority to expel Debra. The essence of the attack on the school board's ruling was that permanent expulsion was an abuse of discretion.

At the outset, we feel constrained to comment on the procedural conduct below. Special actions are review proceedings and the only questions that may be raised are:

A. Whether the defendant has failed to exercise discretion which he has a duty to exercise; or to perform a duty required by law as to which he has no discretion; or

B. whether the defendant has proceeded or is threatening to proceed without or in excess of jurisdiction or legal authority; or

C. whether a determination was arbitrary and capricious or an abuse of discretion.

Rule 3, Rules of Procedure of Special Actions, 17 A.R.S. (Supp. 1971–72)

Although the rules governing special actions have eliminated the tradi-

tional writs, the scope of the relief traditionally granted under the writs of certiorari, mandamus and prohibition has not been enlarged. Ibid, Rule 1. Therefore, a special action is not a trial de novo and the court's function, just as in certiorari, is to determine whether there is any evidence to sustain the findings of the board. Walker v. Dunham, 78 Ariz. 419, 281 P.2d 125 (1955). The fact that Rule 6 authorizes the court in a special action to "annul or confirm the determination in whole or in part, or modify it," does not enlarge the court's authority. 14 C.J.S. Certiorari § 172 (1939). In challenging the determination of the school board, the burden of proving an abuse of its discretion was that of the one claiming such abuse. Safferstone v. Tucker, 235 Ark. 70, 357 S.W.2d 3 (1962); School District No. 17 of Sherman County v. Powell, 203 Or. 168, 279 P. 2d 492 (1955); 78 C.J.S. Schools and School Districts § 128 (1952). The burden did not rest, as the lower court here appeared to think, with the school board to show that there was sufficient evidence to justify its action. The evidentiary presentation of the board, however, reflects that its action was neither arbitrary nor capricious.

On February 8, 1971, Debra, a Tucson High School student did not go to her classes at Tucson High, but met some friends across the street from the school and they took a bus to Pueblo High School, arriving at about 11 a.m. They "sat around talking" to some of their friends at Pueblo High School and were told to get a visitor's pass if they wanted to stay on the grounds. They met a young man at Pueblo who had a car so they went with him to the Pima County Jail where they stayed about 15 minutes and then went to Cholla High School, arriving at about 12:30 or 1:00 p.m.

They purchased lunch from the Cholla High snack bar and then started walking around the school premises. At the teacher's invitation they went into an art class where an argument developed between one of the girls and a Cholla student. Some name-calling ensued and one of the girls appeared to be holding a knife or a knife-like object. The art teacher testified as to the disruption of her classroom by the fighting and that there was blood on many of the students, on the floor, and other places in the room. The noise from the art classroom attracted two other teachers from nearby classrooms who attempted to stop the fracas. The group of fighting students exited from the room despite the teachers' attempts to confine them there. The fighting continued outside on the school grounds with about 150 to 200 Cholla students watching. Some rocks were hurled and Debra was seen throwing a rock about the size of a small football which hit a girl in the upper part of the leg. A police officer was summoned and he and several of the administrators were successful in rounding up Debra and her friends and taking them to the principal's office.

It is not disputed that Debra and her fellow Tucson High School students violated A.R.S. § 13–1092 subsec. A, (Supp. 1971–72):

"No person shall go upon or remain upon the property of any educational institution in violation of any rule or regulation of such institution or for the purpose of interfering with the lawful use of such property by others or in such manner as to deny or interfere with the lawful use of such property by others."

A.R.S. § 13–1093 (Supp. 1971–72) authorizes expulsion as a penalty and A.R.S. § 13–1094 (Supp. 1971–72) specifically recognizes the authority of the governing board of any educational institution to expel, suspend or otherwise punish any student for violation of its rules or regulations even though such violation is unlawful under Article 17 of the Criminal Code.

■ Unlawful campus disorders across the nation which were disruptive of the educational process and dangerous to the health and safety of persons and damaging to public and private property was the rea-

son for enactment of art. 17. Its purpose was to quarantee the students, faculty and other staff and the public that tax-supported education facilities would remain accessible and useful at all times for educational and other authorized public purposes in accordance with appropriate rules and regulations established by their governing board. Ch. 222, § 1 [1970] Ariz.Sess. Laws 1104.

██ The transcript of the hearing below reflects that the trial court felt "that the Board was right, that they had plenty before them and everything to do what they did" and that it merely disagreed as to the propriety of permanent expulsion *vis a vis* limited expulsion. We believe that modification of the school board's order constituted a substitution of the court's judgment for that of the board's in a matter entrusted to the latter body's discretion. The terms "arbitrary, capricious and unreasonable conduct" so as to constitute a manifest abuse of discretion calling for judicial intervention means unreasoning action, without consideration and in disregard for facts and circumstances; where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. State ex rel. Lopez-Pacheco v. Jones, 66 Wash. 2d 199, 401 P.2d 841 (1965). Since the school board had authority to mete out punishment, judicial belief that the punishment was too harsh does not warrant "mixing in." See Kinzer v. Directors of Independent School Dist. of Marion, 129 Iowa 441, 105 N.W. 686 (1906). The question of reinstatement of a student who has learned his lesson must be left to the governing board of the school district and a *laissez-faire* policy must be observed by the courts.

Judgment reversed with directions to enter an appropriate order not inconsistent with this opinion.

KRUCKER, C. J., and HOWARD, J., concur.