4 P.3d 460

**James E. SHAFFER, Agent; John E Shaffer Enterprises, Inc., Licensee, Plaintiffs–Appellants,**

v.

**ARIZONA STATE LIQUOR BOARD and Director of the Arizona Department of Liquor Licenses And Control, Defendants–Appellees.**

**No. 1 CA–CV 99–0332.**

Court of Appeals of Arizona, Division 1, Department E.

Feb. 29, 2000.

---

Donald B. Engler, Yuma, and Lewis and Roca L.L.P. by Susan M. Freeman, Phoenix, for Appellants.

Janet Napolitano, Attorney General by Daniel Christl, Assistant Attorney General, Phoenix, for State of Arizona.

## OPINION

TOCI, Judge.

¶ 1 The Arizona Department of Liquor Licenses and Control ("the Department") filed a complaint against John E. Shaffer Enterprises, Inc. ("JESE"), a liquor licensee. After administrative proceedings, the Director of the Department revoked JESE's license. Following an appeal to superior court, JESE seeks review.

¶ 2 JESE contends that the legislature's amendment of Arizona Revised Statutes Annotated ("A.R.S.") section 12–910, which allows new or additional evidence to be submitted in an appeal from an administrative decision, permits the superior court to weigh the new evidence and to re-find the facts. We conclude, however, that the superior court's function has not changed; its duty is to determine from all the evidence whether the administrative decision is supported by substantial evidence. We also find that substantial evidence supported the administrative action and that revocation of JESE's license is not an excessive penalty.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 3 JESE owns a bar in Yuma. In 1997, when a bar patron named Mark Wilcox got into a fight, JESE security personnel promptly carried him out of the bar and into the parking lot to await police. Gabriel Massey, one of the security guards, placed Wilcox on his stomach and used a wresting hold to restrain him. Some testimony suggested Wilcox continued to struggle, but he eventually lost consciousness, became limp, and stopped breathing. Despite attempts at revival, Wilcox died later that evening. The Pima County Medical Examiner concluded that Wilcox died of "positional asphyxia" or "sudden in-custody death syndrome."

¶ 4 The manager on duty at the bar, Michael Shaffer, and Massey were indicted and prosecuted. The Department meanwhile cited JESE for allowing or permitting Wilcox, an obviously intoxicated or disorderly person, to remain on the premises in violation of A.R.S. § 4–244(14) and for failing to protect customer safety in violation of A.R.S § 4–210(A)(10).

¶ 5 Shaffer and Massey asserted their Fifth Amendment rights, but a hearing ultimately took place before an administrative law judge ("ALJ"). The ALJ found that Wilcox had been allowed to remain on the premises for about thirty minutes after he became obviously intoxicated and that JESE's employees had applied and continued excessive restraint to Wilcox in violation of the statute. The ALJ recommended that JESE's license be suspended for 15 days and that a $4,000 fine be imposed.

¶ 6 The Director of the Department accepted the findings and conclusions but modified the penalty to license revocation. JESE appealed, and the Arizona State Liquor Board affirmed the Director. JESE then sought judicial review in superior court and supplemented the record with testimony from Shaffer's and Massey's criminal trial. Although the court reversed the finding that JESE had allowed an obviously intoxicated patron to remain on the premises, the court affirmed the revocation based on the failure to protect customer safety.[1]

¶ 7 On appeal, JESE argues that the superior court applied an incorrect standard of

---

1. The court found that to support a violation of A.R.S. § 4–244(14), the ALJ had relied on Wilcox's slurred speech, his mussing of a friend's hair, and a vague reference to his difficulty in walking. Those facts did not evidence either "significantly uncoordinated physical action or significant physical dysfunction" within the meaning of the statute. Thus, the court overturned the finding that Wilcox was *obviously* intoxicated.

review and failed to consider the supplemental evidence, that the superior court erred in affirming the license revocation, and that license revocation was too harsh a sanction. We turn first to the legal argument that A.R.S. § 12–910 required the superior court to independently find the facts from the additional evidence submitted in the appeal.

## II. DISCUSSION

### A. Consideration of the Expanded Record

▮ ¶ 8 Interpretation of a statute is a question of law that we review de novo. *See Siegel v. Arizona State Liquor Bd.*, 167 Ariz. 400, 401, 807 P.2d 1136, 1137 (App.1991). When JESE appealed the administrative decision, the superior court rejected an argument that amended section 12–910 expanded the court's scope of review. It also reasoned that substantial evidence was that "which a reasonable mind might accept as adequate to support a conclusion" by a preponderance.

¶ 9 JESE asserts, however, that section 12–910 obliged the court to re-weigh the evidence as an independent fact finder and that the additional evidence from the criminal trial contradicted the ALJ's findings that Shaffer and Massey were indifferent to Wilcox. JESE contends that had the court considered this evidence, it would have found no substantial evidence supported the ALJ's decision.

¶ 10 Prior to amendment, section 12–910(A) stated in part that when reviewing administrative decisions, *"[n]o new or additional evidence in support of or in opposition to a finding, order, determination or decision of the administrative agency shall be heard by the court,* except in the event of a trial de novo or in cases where in the discretion of the court justice demands the admission of such evidence." (Emphasis added.)

¶ 11 As amended, section 12–910(A) allows the court to hear testimony not only from witnesses who testified at the administrative hearing but from those who did not. Section 12–910(B) also provides that *"[r]elevant and admissible exhibits and testimony that were not offered during the administrative hearing shall be admitted"* (emphasis added) and

that objections to that evidence may be heard with two exceptions not relevant here.

¶ 12 A new subsection (E) provides that *"[t]he court shall affirm the agency action unless after reviewing the administrative record and supplementing evidence presented at the evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion."* (Emphasis added.)

¶ 13 By amending the statute to provide that the superior court may consider new or additional testimony in an administrative appeal, the legislature has "muddied the waters" of administrative law. The amendment might suggest, as JESE contends, that when supplemental evidence is admitted on appeal, the superior court acts as an independent fact finder and reweighs all of the evidence without deference to the ALJ. If this were correct, a trial *de novo* would occur in every case in which the superior court admitted additional evidence on appeal.

¶ 14 This interpretation, however, would overturn a system of well established administrative law. The system delegates certain functions to administrative agencies and allows them to develop special competence within the delegated area, to make factual records, to apply their expertise, and to correct their own errors. *See, e.g., Medina v. Arizona Dep't of Transp.*, 185 Ariz. 414, 417, 916 P.2d 1130, 1133 (App.1995). A corollary requires that administrative remedies ordinarily be exhausted before seeking a judicial remedy and that courts defer to administrative decisions supported by substantial evidence. *Id.* To require that the superior court act *de novo* in an administrative matter and to find facts from evidence in a "cold" administrative record would negate these longstanding principles. Furthermore, a trial *de novo* would vitiate the economy achieved by delegating decision making to administrative agencies and would shift a very significant burden to the superior courts.

▮ ¶ 15 We are not convinced that the rules of statutory construction require us to reach this result. We attempt to give stat-

utes a sensible construction. *See Bogue v. Better–Bilt Alum. Co.,* 179 Ariz. 22, 32, 875 P.2d 1327, 1337 (App.1994). We also consider their language, context, subject matter, and consequences. *See Patterson v. Maricopa County Sheriff's Office,* 177 Ariz. 153, 157, 865 P.2d 814, 818 (App.1993).

¶ 16 We note first that section 12–910(C) expressly grants a trial *de novo,* but only in those cases before exempt agencies in which either no hearing was held or the proceedings were not recorded and thus no transcript exists. Had the legislature intended to grant a trial *de novo* when supplemental evidence is offered on appeal pursuant to section 12–910(A), it would likely have said so. *See Bigelsen v. Arizona State Bd. of Med. Exam'rs,* 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App.1993) (where a term appears in one statutory section and not in another, court will not read it into the latter). Furthermore, section 12–910(E) directs the superior court to affirm the agency action unless its review of the administrative record and supplemental evidence reveals that the agency action is not supported by substantial evidence. The latter standard is that which our courts have traditionally applied to administrative decisions. *See, e.g., Berenter v. Gallinger,* 173 Ariz. 75, 77, 839 P.2d 1120, 1122 (App.1992).

¶ 17 We therefore conclude that while the language of the statute allows for supplementing the administrative record in the superior court, it does not permit a trial *de novo* in every instance. Rather, the superior court determines from the administrative record and the supplementing evidence whether substantial evidence still exists in the record to support the administrative decision. The court, as before, defers to the administrative decision if substantial evidence supports it. If, on the other hand, the court concludes that the new or additional evidence is such that, had it been introduced in the administrative proceedings, no reasonable fact finder would have reached the administrative decision, then the latter is not supported by substantial evidence. The superior court may accordingly "reverse, modify or vacate and remand the agency action." A.R.S. § 12–910(E).

¶ 18 For these reasons, we conclude that the legislature did not intend to make the superior court an independent trier of fact and that the statute offers a safety net for the unusual case in which new evidence, had it been presented in the administrative proceeding, would have changed the decision.

¶ 19 Having concluded that the standard of review of administrative decisions has not changed, we next turn to whether the superior court correctly found that when considering the expanded record, substantial evidence supported the ALJ's finding of a violation of A.R.S. § 4–210(A)(10).

**B. Findings of Statutory Violation**

¶ 20 We review the sufficiency of the administrative record to support the ALJ's decision as a question of law and reach our own conclusion whether substantial evidence supports the administrative decision. *See Havasu Hts. Ranch & Dev. Corp. v. Desert Valley Wood Prod., Inc.,* 167 Ariz. 383, 387, 807 P.2d 1119, 1123 (App.1990). Neither we nor the superior court weigh the evidence to see if we would find some evidence more or less persuasive or give it more or less significance. *See id.* Even if the record supports inconsistent conclusions, neither we nor the superior court may substitute our judgment for that of the ALJ, *see Roberts v. State,* 179 Ariz. 613, 618, 880 P.2d 1159, 1164 (App.1994), because conflicting evidence can still be "substantial." *See Williams v. Tucson Unif. Sch. Dist. No. 1,* 158 Ariz. 32, 35, 760 P.2d 1081, 1084 (App. 1987); *DeGroot v. Arizona Racing Comm'n,* 141 Ariz. 331, 336, 686 P.2d 1301, 1306 (App. 1984).

¶ 21 JESE contends that the administrative finding that it violated A.R.S. § 4–210(A)(10) is erroneous because the latter statute requires knowledge of the dangers of positional asphyxia. The statute provides for a sanction if "[t]he licensee *fails to take reasonable steps to protect the safety of a customer* ... entering, leaving or remaining on the licensed premises *when the licensee knew or reasonably should have known of the danger* to such person." (Emphasis added.)

¶ 22 The ALJ's Recommended Decision and Order carefully noted factual inconsistencies between the witnesses who testified at the hearings and resolved those conflicts. The ALJ specifically found that taking Wilcox out and placing him on the ground, even in a prone position, was not unreasonable. But the ALJ also found that Wilcox himself had told Massey that he was choking; that one of Wilcox's friends, Schulte, "raised Mr. Wilcox's head and could see that he was not breathing ... his tongue [was] between his teeth, and his eyes [had] rolled back"; and that when Schulte raised Wilcox's free arm and "it fell limp," Schulte asked Shaffer to tell Massey to "let up on Mr. Wilcox and told him of [his] fear that Mr. Massey was killing Mr. Wilcox," but Shaffer refused.

¶ 23 The ALJ found that, "[u]naware and unconcerned, Mr. Mike Shaffer turned a deaf ear and a blind eye to what was happening, choosing rather to simply wait for the police. Mr. Massey continued application of his weight and hold on Mr. Wilcox, even after the latter had lost consciousness ... for at least one minute." Further, that restraint continued even after Wilcox was "no longer resisting or posing any threat to himself or others." The ALJ also found that with four security guards and Shaffer available, they could have used a different method of restraint. Thus, the ALJ found that JESE's employees violated the statute.

¶ 24 The ALJ's findings clearly support his conclusion that JESE's employees failed to take reasonable steps to protect Wilcox's safety. Those findings were not premised on knowledge or ignorance of positional asphyxia but on the failure to monitor Wilcox's condition and to respond to indications that he was in distress.

¶ 25 The superior court similarly found "substantial support" for Shaffer's indifference to Wilcox's condition. The court stated that Shaffer's "failure to monitor the physical condition of Wilcox cannot be excused based upon his lack of advance knowledge of the concept of positional asphyxia" because before the police arrived, it would have been obvious to a bystander and it was obvious to his friends "that Wilcox's ability to breath[e] was being compromised by his position ...

while restrained by Massey." The court agreed that although Shaffer could have and should have intervened, he did not. To the extent that JESE argues its employees' actions were nevertheless objectively reasonable, the court disagreed.

¶ 26 After reviewing the entire record, we also find substantial evidence supported the administrative decision. The additional expert medical testimony suggested that the risk of death was not to be expected by lay people and that Wilcox's death resulted from more than just the restraint applied. But the testimony did not establish that even if someone had monitored Wilcox's condition or responded to warnings of his distress that Wilcox would still have died; it also did not refute the findings that Massey restrained Wilcox even after he lost consciousness. In fact, Massey's own testimony confirmed that Wilcox complained of choking, that others had shouted warnings, and that when Massey called 911, he described Wilcox as unconscious. Shaffer's testimony contradicted Massey's in that Shaffer denied hearing any warnings of "choking," but Shaffer did not deny that Massey had restrained Wilcox as ordered until police arrived. We agree with the superior court that had the additional evidence been presented to the ALJ, it would not have compelled a reasonable factfinder to reach a different result. Thus, even considering the expanded record, the superior court properly affirmed the ALJ.

## C. Severity of the Penalty

¶ 27 Finally, JESE argues that license revocation was an abuse of the Liquor Board's discretion because JESE did not consciously violate the law and avowed that its harmful conduct would not recur. It contends that given its long history and clean record, as well as the isolated nature of this incident, revocation is too severe a sanction.

¶ 28 In *Petras v. Arizona State Liquor Board*, 129 Ariz. 449, 450, 631 P.2d 1107, 1108 (App.1981), the licensee argued that a liquor license revocation was excessive and thus arbitrary and capricious. To determine whether an agency has acted arbitrarily, we look for " 'unreasoning action, ... in

disregard for facts and circumstances; where there is room for two opinions, the action is not arbitrary or capricious if exercised honestly and upon due consideration.' " *Id.* at 452, 631 P.2d at 1110 (quoting *Tucson Public Schls. Dist. No. 1 v. Green,* 17 Ariz.App. 91, 94, 495 P.2d 861, 864 (1972)). We noted that this court had in other cases affirmed the penalty even when the opposite outcome was equally supportable. *Id.* We also held that when the penalty is statutorily authorized and the licensee fails to show it is disproportionate to the offense, we will affirm. *Id.*

¶ 29 An administrative penalty is not excessive unless "it is so disproportionate to the offense as to shock one's sense of fairness." *Schillerstrom v. State,* 180 Ariz. 468, 471, 885 P.2d 156, 159 (App.1994). Here, the failure to monitor Wilcox's condition at the very least contributed to his death. Revocation is authorized by law, and nowhere is it restricted to situations involving repeat offenses or those in which the licensee took no steps to prevent further offenses. Under these facts, revocation is neither excessive nor does it shock our sense of fairness.

### III.   CONCLUSION

¶ 30 We hold that A.R.S. § 12–910(A) does not grant a trial *de novo* in superior court. We find no error in the administrative finding of a violation of A.R.S. § 4–210(A)(10) or in the superior court's affirmance. Finally, we do not find the penalty excessive and therefore affirm the administrative findings and penalty imposed.

CONCURRING: RUDOLPH J. GERBER, Judge, and THOMAS C. KLEINSCHMIDT, Judge.