NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HILTON WORLDWIDE INC., *Petitioner Employer,*

INDEMNITY INSURANCE COMPANY OF NORTH AMERICA C/O
SEDGWICK CMS, *Petitioner Carrier,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

JAMIE L. BURCH, *Respondent Employee.*

No. 1 CA-IC 16-0048
FILED 3-9-2017

Special Action - Industrial Commission

ICA Claim No.  20143-570215
Carrier Claim No. 30142965324-0001
Paula R. Eaton, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Manning & Kass
Ellrod, Ramirez, Trester, LLP, Phoenix
By Linnette R. Flanigan
*Counsel for Petitioners Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Crossman Law Offices, P.C., Phoenix
By Harlan J. Crossman
*Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.[1]

---

**G E M M I L L**, Judge:

**¶1**  Petitioner employer, Hilton Worldwide Inc., and petitioner carrier, Indemnity Insurance Company (collectively "Hilton"), seek special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a compensable claim, arguing the administrative law judge ("ALJ") erred in assessing the evidence presented. Because the evidence reasonably supports the ALJ's compensability award, we affirm.

**BACKGROUND**

**¶2**  In October 2014, Jamie L. Burch was working as a phone operator at the Arizona Biltmore Resort ("ABR"). Near the end of her shift, she fell and sustained a compound fracture of her left forearm. Burch filed a workers' compensation claim that was denied for benefits. She timely requested an ICA hearing, and the ALJ heard testimony from Burch, her coworker Arlene Boyd, ABR's director of safety and security Sergey Aghajanyan, ABR security supervisor Von Hessler, and independent medical examiner Leo Kahn, M.D.

**¶3**  After receiving post-hearing memoranda, the ALJ entered an award for a compensable claim. Hilton timely requested administrative review, but the ALJ summarily affirmed the award. Hilton timely sought review by this court, and we have jurisdiction under Arizona Revised

---

[1] The Honorable John C. Gemmill and Honorable Patricia A. Orozco, Retired Judges of the Court of Appeals, Division One, have been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

**ANALYSIS**

**¶4**        When reviewing the ICA's findings and award, we defer to the ALJ's factual findings, and consider the evidence in the light most favorable to upholding the award, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003); *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**¶5**        Hilton claims Burch's injury was the result of an idiopathic fall, arising from some condition personal to Burch, such as a preexisting physical weakness or disease. *See* 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law, ("Larson") § 9.01[1] at 9-2 to -4 (2016).

**¶6**        To be compensable, an injury must arise out of and in the course of employment. *See* A.R.S. § 23-1021(A). "Arising out of" is defined as the origin or cause of the injury. *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349 (1970). "In the course of" pertains to the time, place, and circumstances of the accident in relation to the employment. *Id*. It is Burch's burden to prove all elements of a compensable claim. *Toto v. Indus. Comm'n*, 144 Ariz. 508, 512 (App. 1985). An idiopathic fall is a personal risk that does not arise out of employment, unless the employment contributes to the risk or aggravates the injury. *Id.* at 512-13; Ariz. Workers' Compensation Handbook, § 3.3.5, at 3-15 to -16 (Ray J. Davis, et al., eds.; 1992 and Supp. 2015). The general rule is that the effects of an idiopathic fall are noncompensable unless "the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle." *See* Larson § 9.01[1] at 9-2.

**¶7**        The central dispute in this appeal involves the facts surrounding Burch's fall, because there are inconsistent and conflicting histories in the record.

**¶8**        A DVD in evidence provides a partial view of the accident as it occurred. The video shows Burch preparing to leave for the day. She pushes her chair and the adjacent chair into place at the table. She next repeatedly bends down to pick up trash on the floor near the chairs. She walks over to the trash can and then returns to the table where she leans over the back of her chair toward the table. As she then straightens up, she appears to lose her balance and grab her chair. It rolls away from the table

and she falls backward to the floor, pulling the chair on top of her. Burch sits up, pushes the chair off of her with her right arm, and clutches her left forearm. Arlene Boyd, her coworker, then appears in the right side of the frame and retrieves paper towels for Burch's left forearm. Moments later, other ABR personnel appear on screen, and ten minutes later, Phoenix Fire Department personnel arrive to transport Burch to the hospital.

¶9 Von Hessler, the ABR security supervisor on duty at the time, and Sergey Aghajanyan, ABR's director of safety and security, both responded and spoke with Burch while waiting for the fire department. Hessler prepared an incident report admitted in evidence stating,

> Sergey Aghajanyan and I began to talk with Jamie who stated that she was standing on the left side of her chair at her desk when she began to lose her balance. Jamie stated that she tried to catch herself from falling by grabbing onto the chair next to her, but the chair has wheels and slid away from her. Jamie then fell to the ground and landed on her left arm possibly breaking her wrist and cutting her whist [sic] where her watch was fastened. During this time it [sic], Jamie stated that she was taking medication for depression, arthritis and blood pressure. Jamie also explained that she tends to experience dizzy spells and falls frequently. When asked when the last time she fell due to dizziness or losing her balance; she stated that she fell "last Saturday."

¶10 Medical records for Burch's hospital admission at Banner Good Samaritan Medical Center the day of the incident contain the following descriptions:

> **Diagnoses:**
> . . . .
>
> Fall, not orthostatic,[2] denies lightheadedness or dizziness
>
> . . . .
>
> **History of Present Illness**

---

[2] Orthostatic means "pertaining to or caused by standing erect." *Dorland's Illustrated Medical Dictionary* 1194 (28th ed. 1994).

61 y/o lady presents . . . after falling back on outstretched left arm. She states that she was getting up from tying her shoes at work and felt lightheaded and went to support herself on her chair which rolled away. At this point she fell back onto her outstretched left arm

. . . .

**Addendum . . .**

Pt is a 61 y/o F with hx GLF on an outstretched arm after becoming lightheaded when she stood up . . . .

. . . .

**AMS Attending**

. . . .

Pt denies presyncope[3] on our assessment today but agree that IVF are not unreasonable regardless. She reports loss of balance after bending over . . . .

. . . .

**<u>SUBJECTIVE:</u>**

Discussed history with patient. Reports at work stood up, shoe loose, bent down to tie shoes and stood up and was unsteady and fell and landed on arm . . . .

¶11        At the hearing, Burch testified:

I was cleaning out my area and getting ready to go home because I was getting off early . . . . And as I stood up, I went to turn to get behind my chair, and it's like my foot wouldn't come up, and I just - - and I went down.

---

[3]      Presyncope means an episode occurring before a "temporary suspension of consciousness due to generalized cerebral ischemia;" an episode preceding "a faint or swoon." *Dorland's Illustrated Medical Dictionary* 1345, 1622 (28th ed. 1994).  It is often characterized by dizziness or lightheadedness.

Burch further testified that her right foot became stuck on the duct tape that ABR had used to repair a tear in the carpet under her desk chair. While Burch agreed that she had a history of falls, she denied telling the doctors at Good Samaritan Medical Center that she was lightheaded when she fell at work.

**¶12**        Boyd testified that she saw Burch fall because she was sitting at the table to Burch's left when the fall occurred. Burch told Boyd she tripped on tape on the floor. Boyd was also present during questioning of Burch by Aghajanyan and Hessler and testified that they repeatedly asked Burch if she was dizzy before she fell, and Burch said that she was not.

**¶13**        Aghajanyan testified that Burch told him that she felt dizzy before she fell, and she had not mentioned tape on the floor. He could not recall speaking to Boyd, but agreed that it would have been important to do so if she was present at the time of the fall. Hessler also testified that Burch reported feeling dizzy before she fell, and that she never mentioned her foot being stuck on tape.[4] He did not recall speaking to Boyd. He testified that if Boyd witnessed the fall, he should have listed her on the incident report and had her provide a statement.

**¶14**        Finally, Dr. Kahn testified regarding his independent medical examination of Burch. He testified that Burch told him that she was not dizzy or lightheaded at the time she fell. Dr. Kahn noted her statement was inconsistent with the hospital records that he had reviewed. Dr. Kahn testified that the hospital records contained a consistent history throughout, *i.e.*, Burch was getting up from tying her shoes and she felt lightheaded. He stated that this was the same history Burch gave to ABR's personnel and was confirmed in the video recording. Based on this information, he concluded that Burch sustained transient dizziness, a common occurrence when standing up, which caused her to fall.

**¶15**        The ALJ is the sole judge of witness credibility. *Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984). It is her duty to resolve all conflicts in the evidence and to draw all warranted inferences. *See Malinski v. Indus. Comm'n,* 103 Ariz. 213, 217 (1968). Where more than one inference may be drawn, the ALJ is at liberty to choose either and this court will not disturb her conclusion unless it is wholly unreasonable. *Id.*

---

[4]        Hessler testified that he took photographs of the duct tape on the floor on the day of the incident, and that it was lying flat and was not sticky. Two photographs were introduced into evidence at the hearing.

¶16     In this case, the ALJ found:

> It is undisputed that the applicant fell during work hours on her employer's premises and that she broke her arm when she fell. I find the applicant and Ms. Boyd to be credible. The applicant testified that she fell due to her foot being stuck to tape on the floor. Both the applicant and Ms. Boyd testified that, immediately after the fall, the applicant denied any dizziness. I find that the applicant lost her balance and grabbed the chair after tripping at work. The video evidence establishes that the applicant was cleaning her work station and was repeatedly bending over to ground and counter level and then standing up as she cleaned up her work area. The applicant is then seen grabbing hold of the chair, the chair rolling and the chair landing on top of the applicant. The video does not show why the applicant lost her balance. I find the applicant's testimony credible that she tripped. In addition, I find that the chair moving and landing upon her clearly contributed to the applicant's injuries.

Based on the history provided by Burch and the other individuals involved in investigating the fall and treating the injury, and given the video recording, Hilton has not shown that the ALJ's resolution of the conflict is "wholly unreasonable." The evidence supports the ALJ's finding that Burch did not suffer an idiopathic fall.

¶17     Hilton also argues that the ALJ erroneously ignored Dr. Kahn's testimony that Burch sustained an idiopathic fall. When medical evidence is uncontroverted and based on matters peculiarly within the realm of medical knowledge, the uncontroverted medical testimony is generally binding on the ALJ. *Cammeron v. Indus. Comm'n*, 98 Ariz. 366, 371 (1965). But medical testimony can be so weakened by proof of an inaccurate factual background that it cannot be said to constitute substantial evidence to support an award. *See Desert Insulations v. Indus. Comm'n*, 134 Ariz. 148, 151 (App. 1982).

¶18     In this case, Dr. Kahn based his opinion on facts rejected by the ALJ. The doctor's opinion was based on his belief that Burch felt lightheaded before she fell. This belief, however, was rejected by the ALJ and that rejection was supported by the evidence of record. Hilton has shown no error in the ALJ's failure to adopt the doctor's opinion.

**¶19** This court will not disturb the ALJ's conclusion unless it cannot be supported by any reasonable theory of the evidence. *Phelps v. Indus. Comm'n*, 155 Ariz. 501, 506 (1987). Based on the ALJ's resolution of the evidentiary conflicts and her credibility determinations, the award of compensability is reasonably supported by substantial evidence in the record. As this court has explained, conflicting evidence may nonetheless be substantial evidence. *Shaffer v. Ariz. State Liquor Bd.*, 197 Ariz. 405, 409, ¶ 20 (App. 2000).

## CONCLUSION

**¶20** For all of the foregoing reasons, we affirm the ALJ's award of compensability and the ALJ's decision upon review.



AMY M. WOOD • Clerk of the Court
FILED:  AA