NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ABC SAND AND ROCK COMPANY INC, *Plaintiff/Appellant*,

*v.*

FLOOD CONTROL DISTRICT OF MARICOPA COUNTY,
*Defendant/Appellee.*

No. 1 CA-CV 19-0652
FILED 1-7-2021

---

Appeal from the Superior Court in Maricopa County
No. LC2016-000324-001
The Honorable Michael W. Kemp, Judge

**AFFIRMED IN PART AND VACATED IN PART**

---

COUNSEL

Osborn Maledon PA, Phoenix
By Colin F. Campbell, Meghan Grabel, Colin M. Proksel, Joseph N. Roth
*Counsel for Plaintiff/Appellant*

Hinshaw & Culbertson LLP, Phoenix
By Stephen W. Tully, Bradley L. Dunn
*Co-counsel for Defendant/Appellee*

Maricopa County Attorney's Office, Phoenix
By Charles E. Trullinger, III
*Co-counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Cynthia J. Bailey joined.

---

**H O W E**, Judge:

**¶1**         ABC Sand and Rock Company, Inc. appeals the trial court's decision upholding the Maricopa County Flood Control District Board of Hearing Review's imposition of fines for mining in the federal floodplain without a permit. For the following reasons, we affirm the Board's imposition of fines from January 28, 2015, until January 4, 2016, but vacate any fines imposed after that date.

**FACTS AND PROCEDURAL HISTORY**

**¶2**         ABC has been operating its sand and gravel mine in the federal floodplain of the Agua Fria River and New River since 1985. Because of the mine's floodplain location, ABC was required to obtain a permit from the Maricopa County Flood Control District to operate its mine. *See* A.R.S. § 48–3613(A). ABC attempted to renew its current permit in February 2011 before it expired in May 2011. The District denied ABC's permit renewal application because ABC did not submit additional information that the District had requested and issued a notice of violation in May 2011.

**¶3**         The District held a violation hearing in September 2011, where ABC argued that it had successfully renewed its five-year permit. The hearing officer and the District's chief engineer at the time found that ABC had not renewed its permit. That same month ABC filed a permit renewal application that provided the District with the additional information it had requested in February 2011. As a result, the District issued ABC two permits of short duration that extended its ability to mine in the floodplain until July 16, 2012, while the parties engaged in the permitting process. On ABC's appeal, the District's Board of Hearing Review summarily rejected the chief engineer's order finding that ABC had not renewed its permit and the District appealed that decision to the trial court. After the last permit of short duration expired in July 2012, ABC continued mining in the floodplain.

¶4            On January 28, 2015, on remand from the trial court, the Board found that ABC had not renewed its five-year permit and therefore did not have a permit to operate in the floodplain. Thereafter, in February 2015, the District's current chief engineer emailed ABC's owner that ABC had to "pursue a Floodplain Use Permit and pay appropriate fees." He further stated that "[i]f the application is filed and the fees are paid by March 6, 2015, we will forebear any enforcement action for operating without a permit" and "will issue a permit of short duration during the application process if required." About two weeks later, ABC's counsel emailed a "proposed amended plan of development" for its expired permit and paid the amended application fee.

¶5            Meanwhile, in March 2015, ABC's owner emailed several legislators urging them to vote no on a proposed legislative house bill. That email was circulated back to Edward Raleigh, the District's senior engineering advisor. The following day, the District's counsel sent ABC a letter rejecting its permit application because it "[could not] file an amended plan as it ha[d] no permit to operate and thus no current plan to amend." The rejection letter stated that ABC "[could not] mine or conduct related operations on any of the property subject to the lapsed permit" and that "[i]f it mine[d] with the hope that a court [would] find that it ha[d] a permit, ABC [would be] doing so at its own risk." The rejection letter also stated that if ABC "[was] mining currently, it [was] in violation of law and subject to fines, up to $10,000 per day" and that if ABC "want[ed] to resume mining, it [would] need to file a new application and pay the appropriate fee." The rejection letter further stated that ABC's submitted proposal was not credible because it "d[id] not adequately address the impact to surrounding properties and structures, d[id] not address the impact of flows from the east from New River, [and was] based on 6 year old topography at the site." The letter also noted that the engineering study "did not use the FEMA effective models for the floodplain."

¶6            Meanwhile, Raleigh asked Anthony Beuche, one of the District's civil engineers, to prepare a draft permit of short duration for ABC. Beuche emailed the draft permit to the other members of the permitting department stating, "[a]ll are in agreement that the [permit of short duration] will be issued only upon receipt of an application for a new permit." The chief engineer never requested the permit and Beuche never told him about the draft permit.

¶7            The District's counsel sent ABC's counsel a letter in April 2015, stating that the District was waiting on a response and that "[in] the meantime, ABC still needs to stop its mining activity in the flood plain."

The letter warned that if ABC did not submit the necessary paperwork and pay the appropriate fees by May 1, 2015, the District would commence a new enforcement action. The letter clarified that the District "is looking for a good faith submittal and evidence of vigorous follow up to get the permit issued."

**¶8**          ABC hired new counsel, Michelle De Blasi, who sent a letter to the District on May 1, 2015 with the required paperwork and fees referenced in the March 2015 rejection letter. She also stated that "[y]ou have also indicated that a permit of short duration would be issued upon your receipt of the enclosed submission, and I ask that you send a copy of that permit to my attention as soon as possible." The District did not issue a permit.

**¶9**          ABC's May 2015 application did not resolve the deficiencies noted in the March 2015 rejection letter. A week later, the chief engineer sent ABC a notice of violation and cease and desist letter stating that ABC was mining in the floodplain without a permit and ordered ABC "to cease and desist all unpermitted activity" until it obtained a permit. A few days later, De Blasi requested that the notice of violation letter be rescinded because the District had promised to forbear enforcement of any violations once a new permit application was submitted and that ABC had submitted a new permit application by the May 2015 deadline. She further stated that ABC had not received "an administrative completeness letter" and asked that the District either list any issues with the application or move the application forward to the substantive review process. She again requested "that a permit of short duration be issued while working through the application process[.]"

**¶10**          De Blasi, along with ABC and District employees, met on June 15, 2015, to discuss ABC's permit application. After the meeting, De Blasi emailed the attendees a summary of the parties' discussion. The summary noted that ABC's permit application was administratively complete, that "[t]he parties agreed to work in good faith to diligently proceed through the substantive review process[,]" that the District would send ABC a list of substantive corrections within 15 working days, that "a temporary permit was not necessary and will not be pursued" because the parties were working "diligently to process the permit application[,]" and that "a hearing for the Notice of Violation would not be set at this time[.]" The District's assistant deputy manager agreed that the email accurately summarized the meeting. The next day, the District notified ABC that the May 2015 application was administratively complete and started the substantive review process.

¶11          Two weeks later, Beuche sent De Blasi a list of requested corrections to the application. Near the end of July 2015, Beuche followed up with De Blasi asking when the District would receive "a revised Plan of Development for second substantive review." That same day, De Blasi responded that ABC was working through the comments and hoped to submit a response by the end of the following week. No response was submitted. In mid-August 2015, Beuche spoke with De Blasi again and she assured him that a response would likely be submitted by the end of September. Again, no response was submitted. Thereafter, ABC retained new counsel.

¶12          On November 2, 2015, the District scheduled a notice of violation hearing. ABC's new counsel responded to the hearing notice and acknowledged that several months had passed since the June meeting and that "unbeknownst to my client," De Blasi had "made little progress" on responding to the District's request for corrections. Counsel stated that she would respond to the District's request for corrections by sending the responses that did not require an engineering analysis by November 13 and the responses that did require an engineering analysis by November 30. She therefore requested that the District cancel the violation hearing.

¶13          The District's counsel refused to postpone the hearing, alleging that since ABC had submitted the May 2015 application, it had made no progress to advance the permit application and continued to "maintain an illegal sand and gravel operation." He offered that if ABC submitted the information required to comply with the permit regulations, the District would consider resolving the dispute before the hearing.

¶14          On November 13 and November 30, 2015, ABC's counsel submitted its responses to the District's request for corrections. On December 23, 2015, Beuche responded that ABC's substantive review responses failed "to address all of the substantive review comments provided[.]" He again requested that ABC complete the necessary revisions and resubmit the application for further review.

¶15          On January 4, 2016, the District held a notice of violation hearing to determine whether ABC had operated a mine in the floodplain without a permit and, if so, what fines should be imposed. A civil engineer for the District testified that ABC was mining in the floodplain without a permit from July 16, 2012, until December 31, 2015. He testified that in February 2015, ABC submitted an amended permit application rather than a new permit application.

¶16        ABC's accountant admitted that ABC had continuously mined in the floodplain since July 2012, but testified that until January 28, 2015, it believed that it had been operating under a valid permit. He testified that he did not know why the District had never issued ABC a permit of short duration but acknowledged that the parties had agreed that a permit of short duration was unnecessary and that ABC would not pursue one.

¶17        The hearing officer found that ABC had mined in the floodplain without a permit. He recommended that the District's chief engineer, impose no fines for the period from July 16, 2012, to January 28, 2015. He recommended a $500 fine per day for the period from July 30, 2015, to November 30, 2015. His recommendation was silent on the period between January 28, 2015, and July 30, 2019.

¶18        The chief engineer adopted most of the hearing officer's recommendations. He did not impose any fines for the period from July 16, 2012, to January 28, 2015. While the hearing officer's recommendation was silent about fines for the period from January 28, 2015, to July 30, 2015, the chief engineer imposed a fine of $5,000 for that period. He imposed the recommended $500 fine per day for the period from July 30, 2015, to December 23, 2015, and imposed a $2,500 fine per day for the period from December 23, 2015, "until the date ABC ceases to operate in the floodplain without a valid floodplain use permit." ABC appealed to the Board of Hearing Review, which held a hearing in June 2016. Following the hearing, the Board upheld the chief engineer's order but reduced the continuing daily fine imposed after December 23, 2015, from $2,500 to $1,000 "until the District determines to issue or deny a Floodplain Use Permit."

¶19        ABC appealed the Board's decision to the trial court. Meanwhile, the District finished the substantive review process for ABC's floodplain permit application and granted ABC a floodplain use permit on August 10, 2017. That same month, De Blasi was deposed and testified that after the June 15, 2015 meeting, ABC did not need a permit of short duration "because we were going to work through this process quickly . . . and not take staff time trying to work through a permit of short duration."

¶20        In August 2017, the trial court held an evidentiary hearing to supplement the record at ABC's request. The District's chief engineer testified that the District had rejected ABC's February 2015 permit application because it had submitted an amended application instead of a new application and paid the incorrect fee. He agreed that before July 30, 2015, he had neither granted nor denied ABC's request for a permit of short

duration and that he was not aware of any other mines that had been denied a permit of short duration.

¶21 Beuche testified that his email statement that "[a]ll are in agreement that the [permit of short duration] will be issued only upon receipt of an application for a new permit" referred to the standard for issuing that permit and was not a declaration that other members of the permitting department agreed that the permit of short duration would issue. He further testified that ABC's February 2015 amended permit application included a development plan that the District would not approve because the plan relied on a preliminary study that had not been approved under the floodplain regulations. He also noted that the development plan would adversely affect surrounding properties and structures and that it did not rely on the Federal Emergency Management Agency's approved water flow rate. He testified that ABC's response to the requested corrections on November 30, 2015, still included a development plan that did not account for the flow of water from New River and tried to justify using the preliminary study that the District had rejected in March 2015.

¶22 Raleigh testified that the District started issuing permits of short duration in 2010 or 2011, and that it had never denied a permit of short duration until 2015 when it declined to issue one to ABC. He testified that ABC was the only mining company that did not cooperate with the District during the permitting process. He further testified that ABC's February 2015 permit application was not credible and that, other than removing the word "amendment" from the cover page, ABC's May 2015 application was the same as its February 2015 application. ABC's counsel did not question the District's employees about any internal discussions about its decision not to issue a permit of short duration in February 2015 because the employees had raised the attorney-client privilege.

¶23 Timothy LaSota, an attorney for ABC, testified that starting in 2011, he had helped ABC analyze pending legislation and has appeared before the District's Board of Directors and the state legislature. He testified that in 2011, he appeared on ABC's behalf before the District's Board of Directors and argued against a rule amendment that the District wanted the Board of Directors to adopt. ABC alleged that because it had exercised its right to free speech by opposing the District's rule amendment, the District had retaliated by ignoring its requests for a permit of short duration in 2015.

¶24 Following the evidentiary hearing and oral argument, the trial court upheld the Board's decision in an unsigned July 2018 minute

entry. In affirming the Board's order, the trial court did not consider arguments that were not raised at the administrative hearing or before the Board and did not consider evidence of acts that occurred after the administrative hearing. The court rejected ABC's argument that the denial of its permit of short duration was politically motivated. The court also considered and rejected ABC's argument that the June 2015 agreement gave ABC a de facto permit.

¶25        In February 2019, ABC requested that the court issue a final judgment under Arizona Rule of Civil Procedure ("Rule") 54(c). The court issued a signed, final judgment under Rule 54(c) in August 2019 and ABC timely appealed that judgment in September 2019.

## JURISDICTION

¶26        The District argues that this Court does not have jurisdiction over this appeal because in 2018, the Rules of Civil Procedure did not apply to the Rules of Procedure for Judicial Review of Administrative Decisions, and thus no Rule 54(c) language was required. Therefore, the District argues that ABC needed to appeal the trial court's July 2018 minute entry within 30 days and that it had failed to do so. But this Court held in 2016, that administrative decisions are subject to Rule 54(c) certification. *Brumett v. MGA Home Healthcare, L.L.C.*, 240 Ariz. 420, 431 ¶ 23 (App. 2016). Therefore, this Court was without jurisdiction until the trial court entered a signed, final judgment under Rule 54(c) in August 2019. ABC timely appealed that judgment and we have jurisdiction to consider the appeal.

## DISCUSSION

¶27        ABC argues that the Board's order imposing fines past January 4, 2016, is unlawful because the Board does not have authority to do so. In reviewing the trial court's decision affirming an administrative order, we follow the same process the trial court did, assessing whether "the agency's action is contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." *Holcomb v. Ariz. Dep't of Real Estate*, 247 Ariz. 439, 443 ¶ 9 (App. 2019) (quoting A.R.S. § 12–910(E)). We review questions of law de novo. *Id.*

¶28        A person who operates in a floodplain without a permit is subject to a civil penalty not to exceed the fine for a class 2 misdemeanor. A.R.S. § 48–3615(A)–(C). If a person operates in the floodplain without a permit, the District's chief engineer must issue a notice identifying the violations observed and order the person to cease and desist any ongoing activity not in compliance with the floodplain regulations. A.R.S.

§ 48–3615.01(A). After a notice of violation hearing, the hearing officer shall issue a recommendation "for the imposition of any civil penalties attributed to the violation." A.R.S. § 48–3615.01(E). If the person continues the violation after the chief engineer, hearing officer, or Board of Hearing Review issues a final decision, "the chief engineer may apply for a temporary restraining order or preliminary or permanent injunction[.]" A.R.S. § 48–3615.01(J).

¶29            The Board lacked authority to impose fines for violations that had not yet occurred. The January 2016 notice of violation hearing related only to ABC's mining in the floodplain without a permit from July 16, 2012, until January 4, 2016. No fines could be imposed after that period, because the chief engineer had not observed any violations after that date. *See* A.R.S. § 48–3615.01(A), (E). Rather, if the violations continued beyond the period observed in the notice of violation hearing, the District needed to either seek an injunction or issue another notice of violation for that period. *See* A.R.S. § 48–3615.01(A), (J). As a result, the Board's imposition of fines after January 4, 2016, was contrary to law.

¶30            The District argues that ABC waived this argument because it failed to raise it at the notice of violation hearing and with the Board. But ABC could not have raised this argument at the notice of violation hearing because the District did not seek prospective fines and the hearing officer did not recommend any prospective fines. Prospective fines were first imposed by the chief engineer, and ABC challenged the fines at its first opportunity before the Board. Therefore, ABC did not waive its argument.

¶31            The District asserts that pursuant to Arizona Constitution Article XIII, § 7, the Board had the authority to impose civil penalties for continuing violations under A.R.S. § 48–3615(C) and A.R.S. § 9–500.21(4). Flood control districts are political subdivisions of the state and are vested with "all the rights, privileges, and benefits" granted to municipalities and political subdivisions by the laws of the state. Ariz. Const. art. XIII, § 7. A city or town may classify ordinance violations as civil offenses and shall determine the imposition of a civil penalty. A.R.S. § 9–5001.21(4). The hearing officer may impose civil penalties for ordinance violations for each day that a violation exists beyond the initial notice constituting a separate offense. A.R.S. § 9–5001.21(4). Each day that a person operates in a floodplain without a permit constitutes a separate violation. A.R.S. § 48–3615(A), (C).

¶32            Neither statute, however, allows the Board to impose fines for violations that have not yet occurred. *See* A.R.S. § 9–5001.21(4); *see also*

A.R.S. § 48–3615(C). Rather, A.R.S. § 48–3615(C) merely states that each day constitutes a separate violation, allowing a fine of up to $10,000 to be imposed each day. The District is not a city or a town, so A.R.S. § 9–5001.21(4) does not apply. Even if it did apply, it merely allows the Board to impose civil penalties after the notice of violation is issued. The statute does not allow the Board to impose fines for violations that have not yet occurred. *See* A.R.S. § 9–5001.21(4). Additionally, A.R.S. § 48–3615.01(J) specifically gives the District a remedy when the violation continues beyond the hearing officer's decision, and that statute does not allow the Board to impose fines for violations that have not yet occurred.

¶33 The District argues that this Court has upheld continuing daily fines in the zoning context, citing *Coconino Cty. v. Calkins*, No. 1 CA–CV 18–0098, 2019 WL 1076238 (Ariz. Ct. App. Mar. 7, 2019) as an example. But that case is distinguishable. First, the party in that case did not challenge the county's ability to impose a daily continuing fine. *See id.* And second, the county's zoning ordinance expressly permitted continuing fines until the party complied with the zoning ordinance. *See* Coconino Cty. Zoning Ordinance § 16(D)(4)(c) ("A non-compliance and daily penalty schedule shall be outlined in the judgment to accrue should the violation not be abated by the compliance date specified by the hearing officer."). No similar language is contained in A.R.S. § 48–3615 or § 48–3615.01. Rather, the District's remedy for a continuing violation is to seek an injunction and issue a new notice of violation. *See* A.R.S. § 48–3615.01(A), (J). The Board did not have the authority to impose a continuing, daily fine after January 4, 2016, and the fines imposed after that date are vacated.[1]

¶34 ABC contends that the trial court erred by refusing to consider arguments not presented at the administrative hearing or before the Board. ABC cites four arguments that the trial court did not consider. Generally, arguments not raised at the administrative hearing are waived on appeal. *Pavlik v. Chinle Unified School Dist. No. 24*, 195 Ariz. 148, 151 ¶ 8 (App. 1999). Notwithstanding ABC's waiver, the court expressly considered and rejected two of its arguments. The trial court determined that ABC had presented insufficient evidence that the District's denial of its request for a permit of short duration had been politically motivated. The court also rejected ABC's argument that the June 2015 agreement granted it a de facto permit; the email ABC relied on did not authorize operating in the floodplain without a permit. ABC's argument that the District did not comply with A.R.S. § 48–3645(J) could have been raised at the

[1] We therefore need not consider ABC's other arguments related to the fines imposed after January 4, 2016.

administrative hearing but was not. Likewise, ABC could have presented evidence that the District had never previously denied a permit of short duration to a mining company. ABC rejected the administrative hearing officer's offer to subpoena the District's chief engineer to testify at the hearing. Had ABC called the engineer, it could have questioned him about the treatment of other mines. Therefore, those two arguments were properly waived.

¶35      ABC argues that substantial evidence does not support the Board's order because the District misused the attorney-client privilege during the evidentiary hearing. It contends that the District used the attorney-client privilege as both a sword and a shield to prevent it from developing evidence about the reasons the District decided not to issue the permit of short duration, arguing that if the District had issued the permit in February 2015, no fines would have been imposed. It further argues that the only reason the District did not issue a permit of short duration in February 2015 was to retaliate against ABC's political speech. ABC argues that without evidence why the District denied the February 2015 permit of short duration, the District cannot rebut its argument and that no substantial evidence supports the Board's order.

¶36      A party does not waive the attorney-client privilege, however, "by the mere fact that the privileged information would be relevant or of pragmatic importance to the issues before the court—otherwise, the privilege would have little meaning." *Robert W. Baird & Co. Inc. v. Whitten*, 244 Ariz. 121, 127 ¶ 17 (App. 2017). To waive the attorney-client privilege, the party claiming the privilege must affirmatively interject the advice of counsel into the litigation. *Id.* Among other things, the assertion of privilege must have denied the opposing party access to information vital to its defense. *Burch & Cracchiolo, P.A. v. Myers*, 237 Ariz. 369, 375 ¶ 18 (App. 2015).

¶37      The District did not affirmatively interject advice of counsel into this litigation, and its assertion of privilege did not deny ABC any access to information vital to its defense. ABC does not argue that the assertion of privilege prevented it from presenting evidence and argument that the District ignored its request for a permit of short duration in February 2015 in retaliation for its political speech. It presented evidence supporting its argument, and the trial court rejected it. ABC argues only that the District could not rebut this argument without evidence protected by the attorney-client privilege.

¶38 But the District did not need any privileged information to rebut ABC's argument because it presented ample evidence why it did not issue a permit of short duration in February 2015. The District's chief engineer testified that the permit application was rejected because ABC submitted an amended application and paid the wrong fee, which was evidenced by the District's letter to ABC rejecting its February 2015 permit application. The District's offer to issue a permit of short duration in February 2015 was contingent on ABC's submitting a permit application and paying the appropriate fee. Because ABC did not pay the appropriate fee until May 2015, the District was not obliged to issue a permit of short duration in February 2015. No privileged information was needed to rebut ABC's allegation.

¶39 ABC also argues that the Board's order is contrary to law because the District did not give it written notice of the denial of its request for a permit of short duration as A.R.S. § 48–3645(J) requires. It further argues that the Board's order is contrary to law because it imposes fines for operating without a permit when the District unlawfully refused to process ABC's short-term permit requests. The District agreed that, if required, it would issue a permit of short duration after ABC filed an application for a floodplain use permit and paid the appropriate fee. But as previously stated, ABC filed the wrong permit application and paid the wrong fee. The District gave ABC a written denial of its February 2015 application and no permit of short duration could have been issued until the proper application had been filed and the appropriate fee paid. ABC filed the proper application and paid the appropriate fee in May 2015. And while the District did not issue or deny a permit of short duration at that point, in June 2015, ABC agreed to focus on its five-year permit application and not pursue a permit of short duration, effectively withdrawing its request. Because ABC did not pay the appropriate permit application fee until May 2015 and then withdrew its request for a permit of short duration in June 2015, the District did not unlawfully refuse to grant ABC's 2015 permit requests.

¶40 ABC argues next that the fine imposed from January 28, 2015, to July 30, 2015, is contrary to law, unsupported by the evidence, and arbitrary and capricious because the District agreed to forebear enforcement and issue a permit of short duration. As previously stated, however, the District was not required to issue a permit of short duration in February 2015 because ABC did not pay the appropriate fee. Further, the District agreed to forebear enforcement only if ABC submitted a good faith application and vigorously followed up on the application. Even though the District noted several issues with ABC's February 2015 application,

12

ABC submitted the same application in May 2015, after making a few minor changes. The District therefore properly rescinded its agreement to forebear enforcement. Additionally, ABC effectively withdrew its request for a permit of short duration in June 2015. Therefore, the fine imposed from January 28, 2015, to July 30, 2015, is not contrary to law, is not arbitrary and capricious, and is supported by substantial evidence.

¶41    ABC argues that the fines imposed from July 30, 2015, to December 23, 2015, are arbitrary and capricious and are unsupported by the evidence because the Board "accords essentially no weight to the parties' June 2015 agreement" that a "temporary permit [was] not necessary and [would] not be pursued." It argues that the District's chief engineer agreed that he was bound by the agreement. This Court does not reweigh evidence, however, and defers to the administrative agency's factual findings. *See Shaffer v. Ariz. State Liquor Bd.*, 197 Ariz. 405, 409 ¶ 20 (App. 2000); *see also Holcomb*, 247 Ariz. at 443 ¶ 9. Further, De Blasi testified only that ABC had agreed not to pursue a permit of short duration and focus on the five-year permit. She did not testify that this agreement allowed ABC to mine in the floodplain without a permit. The District merely agreed that as long as ABC worked diligently and in good faith to pursue a long-term permit, the District would continue to forebear enforcement of the May 2015 notice of violation.

¶42    ABC further argues that the Board's rationale—that ABC took an unreasonable amount of time to respond to the District's request for corrections—is not supported by the evidence and is not based on any legal standard. It contends that the District provided no deadline and that its request for corrections gave ABC one year to respond. It also argues that ABC was improperly fined for the period when it was waiting for the District to respond.

¶43    Substantial evidence supports the Board's finding that ABC did not diligently pursue a long-term permit. The one-year deadline specified in the request for corrections is when the permit application automatically expires by statute when no response is received. The District's agreement to forebear enforcement was based on ABC's promise that it would vigorously and diligently work through the application process. But ABC did not follow through. After the District submitted its request for corrections to ABC, De Blasi stated that she hoped to respond by the following week. When no response was submitted, Beuche followed up by asking when the District would receive ABC's responses. De Blasi then said that she would likely submit ABC's responses by the end of September. Again, ABC submitted no response. ABC's current counsel

even admitted that its previous counsel had "made little progress" during that time period. And when ABC submitted its responses in November 2015, the responses failed to address the substantive issues Beuche raised in March and July 2015. Substantial evidence thus supports the Board's finding that ABC did not act diligently or in good faith.

¶44        ABC was also not improperly fined for the period during which the District was reviewing its responses. ABC was mining in the floodplain without a permit during this time. The District promised only to forebear enforcement and warned ABC multiple times that it was mining at its own risk. Once the District determined that ABC was not pursuing the application diligently or in good faith, it was free to seek enforcement for the entire period that ABC was mining without a permit. Therefore, substantial evidence supports the Board's imposition of fines from July 30, 2015, to December 23, 2015, and is not contrary to law or arbitrary and capricious.

¶45        ABC argues last that the imposition of fines after December 23, 2015, is contrary to law because the fines were driven by the District's frustration with ABC. It argues that the fines are based on ABC's "poor attitude" which is not a legal basis for a fine. ABC does not cite any authority to support its argument. Even so, mining in the floodplain without a permit is justification for a fine and ABC admitted that it had operated in the floodplain without a permit. Because the fines for that period were based, in part, on ABC's violation of the floodplain regulations, the imposition of fines from December 23, 2015, until January 4, 2016, are not contrary to law.

## CONCLUSION

¶46        For the foregoing reasons, we affirm the Board's imposition of fines from January 28, 2015, to January 4, 2016, but vacate any fines imposed after that date. Because each party prevailed in part, neither is entitled to its attorneys' fees.



AMY M. WOOD • Clerk of the Court
FILED:    AA

14